[Civ. No. 60052. Second Dist., Div. Two. July 27, 1981.]

DIANE HOFFMAN, Plaintiff and Appellant, v. SECURITY PACIFIC NATIONAL BANK, Defendant and Respondent.

COUNSEL

David Daar, Miller & Daar and Erwin Sobel for Plaintiff and Appellant.

Rogers & Wells, William A. Masterson and Sheppard, Mullin, Richter & Hampton for Defendant and Respondent.

William Alsup, Charles R. Farrar, Jr., Agustin Medina and Morrison & Foerster as Amici Curiae on behalf of Defendant and Respondent.

OPINION

**FLEMING, Acting P. J.**—Plaintiff Diane Hoffman, individually and on behalf of all others similarly situated, appeals a judgment on a nonsuit

and directed verdict in favor of defendant Security Pacific National Bank (Bank). The action attacks the legality of the Bank's practice of charging its customers $4 when they write checks for amounts exceeding the balance in their accounts. We affirm the trial court's judgment.

The action was commenced in October 1974 by Harry Resnick, on behalf of himself and all others similarly situated, to, inter alia, declare illegal and unenforceable the then $3 service charge imposed by the Bank for processing checks written by depositors when the funds in the depositor's account are less than the amount of the check(s) (NSF checks). The charge is assessed whether the bank exercises its option under California Uniform Commercial Code section 4401 to pay the check and charge the depositor's account or whether it refuses to pay and returns the check. The original complaint contained nine causes of action, of which five were disposed of by demurrer, summary judgment, or plaintiff's abandonment. In March 1976 Diane Hoffman was substituted for Resnick as the class representative.

The four remaining causes of action were all based upon the theory that the service charge imposed by Bank for processing an NSF check constitutes an unlawful liquidation of damages, a "penalty" under former Civil Code section 1670. That section declared: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in [former § 1671]." Former section 1671 authorized the parties to agree in advance "upon an amount which [would] be presumed to be the amount of damage sustained by a breach [of their contract], when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."[1] Plaintiff alleged the depositors had covenanted with Bank not to write NSF checks and the imposed charge was a penalty for breaching that covenant.

In August 1979 the trial court certified the class as one consisting of persons who have had nonbusiness checking accounts with Bank during a period from 1970 to 1978 and who have paid nonsufficient fund charges for writing NSF checks.[2] The court then declared that the com-

---

[1]The Legislature on July 1, 1978, repealed section 1670 and amended section 1671 to effect a new policy favoring liquidated damage provisions, except in consumer contracts. (See Civ. Code, § 1671, subds. (b), (c).)

[2]Plaintiff did not assert any covenant to maintain a positive balance in the subject checking accounts, as would be required when depositors agree to maintain a minimum balance in lieu of a monthly service charge.

mon issues of law and fact to be tried were (1) whether there was an implied covenant in the depositors' contracts with Bank that the depositors would not write overdrafts, and (2) if there was such a covenant, whether the charge fixed in anticipation of a breach of that covenant was justified by the impracticability or extreme difficulty of assessing damages, or whether it was merely a penalty.

At trial, the court bifurcated the threshold issue of an implied covenant not to write NSF checks and received evidence on that issue only. After several days of trial Bank moved for a directed verdict or nonsuit. The court concluded plaintiff had failed to show any obligation on the part of a depositor in a personal checking account to refrain from writing NSF checks, granted the motion, and directed the jury to return a verdict in favor of Bank. Subsequently, the court entered judgment for defendant on the directed verdict.

█ A nonsuit or directed verdict in favor of a defendant is proper when, disregarding conflicting evidence and indulging every legitimate inference in favor of plaintiff's evidence, there is no evidence of sufficient substantiality to support a decision in plaintiff's favor. (*Grudt* v. *Los Angeles* (1970) 2 Cal.3d 575, 586-587 [86 Cal.Rptr. 465, 468 P.2d 825]; *Four Seas Investment Corp.* v. *International Hotel Tenants' Assn.* (1978) 81 Cal.App.3d 604, 609 [146 Cal.Rptr. 531]; *Contreras* v. *St. Luke's Hospital* (1978) 78 Cal.App.3d 919, 926 [144 Cal.Rptr. 647].) █ At bench, plaintiff alleged and sought to prove that the NSF charge imposed by defendant Bank constituted an invalid damage liquidation, a "penalty" under former Civil Code section 1670. But if no contractual obligation has been breached, a charge cannot be either a valid assessment of agreed-upon and anticipated damages for breach or a penalty for that breach. For plaintiff to prove the depositors' claim under section 1670 it was necessary for her to first establish that the charges were imposed for breach of a promise not to write checks which, if honored, would create overdrafts on their accounts.

Plaintiff argued, and attempted to prove, that the depositors entered into a covenant not to write NSF checks when they executed signature cards which contained the statement: "This account shall be governed by applicable banking laws, customs, and Clearing House regulations and by the rules presented in the bank book, and shall be subject to the service charge schedule of the bank." Plaintiff attempted to show that industry custom prohibited the writing of overdrafts without prior

agreement and that the depositors' promise to pay a service charge for any NSF check contained an implied covenant not to write such checks.

Plaintiff failed to establish any such custom or any agreement on the depositors' part not to write overdrafts. ■ Moreover, statutes governing the obligations of banks and their depositors, which are incorporated into and become part of the contract between a bank and its depositors (see *Alpha Beta Food Markets, Inc.* v. *Retail Clerks Union* (1955) 45 Cal.2d 764, 771 [291 P.2d 433], cert. den. (1956) 350 U.S. 996 [100 L.Ed. 861, 76 S.Ct. 547]; *Weaver* v. *Bank of America* (1963) 59 Cal.2d 428 [30 Cal.Rptr. 4, 380 P.2d 644]), treat an overdraft as an application for advance credit rather than as a breach of an express or implied covenant. California Uniform Commercial Code section 4401 specifically authorizes a bank to pay overdrafts and to charge customers' accounts to recover amounts paid, even when payments result in overdrafts on the account. While a bank has a statutory obligation to honor any check drawn by a depositor for an amount not exceeding the balance in his account, and while the depositor has a contractual obligation to pay a service charge when he presents a NSF check, the depositor has no statutory or contractual obligation to refrain from drawing checks for amounts in excess of the balance in his account. (Cal. U. Com. Code, § 4401.) ■ In brief, plaintiff did not and could not prove that the depositors breached an obligation to Bank when they negotiated NSF checks. Accordingly, the service charge they agreed in advance to pay for presenting such an overdraft was not a penalty under former Civil Code section 1670.

Plaintiff's reliance on *Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731 [108 Cal.Rptr. 845, 511 P.2d 1197, 63 A.L.R.3d 39], is misplaced. That case involved a class action by borrowers to recover sums paid in satisfaction of charges imposed under a loan agreement provision assessing a percentage of the unpaid principal balance when a borrower failed to timely pay an installment. Under the terms of their loans the borrowers had specifically agreed to pay sums certain on dates certain. The Supreme Court overruled a demurrer to the depositors' complaint because it found that the pleadings sufficiently averred a section 1670 penalty for untimely payments under the loan agreement. The court, however, warned that even if the late charge provisions were void under former section 1670, the borrower had an obligation under the loan agreements to pay the installments on time and to pay reasonable, although not predetermined, damages for a breach of that obligation. (Pp. 740-741.) In contrast, plaintiff at bench

and the depositors she represents did not have any obligation, under their signature cards or otherwise, to refrain from writing overdrafts. Accordingly, they did not breach any covenant by so doing.

Because plaintiff could not establish an implied agreement not to write NSF checks, the issues whether the charges constituted liquidated damages and, if so, whether the setting of the charge in advance of breach was justified under the exception contained in former Civil Code section 1671, were never tried. However, we note that where, as in the case of an NSF check, the amount of damages is small and the cost of ascertaining damages in each instance would exceed the sum agreed upon in advance as a charge, the computation of actual damages each time a breach occurs is both impractical and extremely difficult. (See *Garrett v. Coast & Southern Fed. Sav. & Loan Assn., supra,* pp. 741-742.) Accordingly, even if there had been an implied covenant not to present NSF checks, it appears all but certain that defendant Bank could, upon a proper showing, have established that its practice of setting in advance an agreed-upon service charge to be paid as compensation for breach of contract was necessary and therefore permissible under former Civil Code section 1671.

The judgment is affirmed.

Beach, J., concurred.

A petition for a rehearing was denied August 24, 1981, and appellant's petition for a hearing by the Supreme Court was denied October 7, 1981. Kaus, J., did not participate therein. Bird, C. J., was of the opinion that the petition should be granted.