[Civ. No. 61736. Second Dist., Div. One. June 30, 1982.]

JERRY SHAPIRO et al., Plaintiffs and Appellants, v.
UNITED CALIFORNIA BANK, Defendant and Respondent.

COUNSEL

Miller & Daar and David Daar for Plaintiffs and Appellants.

Severson, Werson, Berke & Melchior, Claire D. Johnson and Jan T. Chilton for Defendant and Respondent.

OPINION

**HANSON (Thaxton), J.**—Plaintiffs Jerry and Sylvia Shapiro, individually and on behalf of all others similarly situated, appeal from an order of dismissal entered following a nonsuit granted in favor of defendant United California Bank (hereinafter referred to as UCB) in this class action for damages based on alleged unlawful penalties charged by UCB for processing checks drawn on checking accounts without sufficient funds.

FACTS

On October 9, 1974, plaintiffs instituted this class action suit against UCB for damages arising from an alleged unlawful penalty imposed by UCB on its customers for the processing of checks drawn on checking accounts without sufficient funds (NSF checks).[1] Plaintiffs' complaint, which contained nine causes of action, sought, inter alia, a declaration that UCB's practice of assessing NSF charges is illegal, and a permanent injunction restraining UCB from enforcing NSF charges.[2]

UCB filed a demurrer to plaintiffs' complaint in November 1974. The demurrer was sustained without leave to amend as to four of the nine causes of action. Another cause of action, that for fraud, was dismissed by class certification order on September 5, 1979.

---

[1] In the banking industry, a check drawn on an account lacking sufficient funds is referred to as a nonsufficient fund check (NSF check). Charges for processing NSF checks are generally assessed by banks against the accounts of the offending customers regardless of whether the bank honors the check or, alternatively, refuses to pay and returns the check.

[2] Plaintiffs declared in their title that the complaint was for "damages, money, money had and received, unjust enrichment, restitution, fraud, conversion, and demand for an accounting."

The remaining four causes of action were all predicated on the theory that UCB's practice of assessing NSF charges constituted an unlawful penalty within the meaning of former section 1670 of the Civil Code.

In April 1978, UCB filed a motion for summary adjudication of issues without substantial controversy, which sought a determination that the NSF charges assessed by UCB on its customers did not constitute penalties as defined by Civil Code section 1670. This motion was denied by the trial court.

In September 1979, the trial court issued an amended order certifying the class of plaintiffs and specifying the common issues of law and fact to be tried.[3] The trial court then ordered UCB to publish class notices in various newspapers throughout California.

The case proceeded to trial before a jury on November 1, 1979. At that time UCB filed a motion for a separate trial on the issue whether the signature cards plaintiffs executed upon opening an account with UCB contained an implied covenant that the plaintiffs would not write NSF checks.[4] UCB's motion was made on the basis that under former Civil Code sections 1670 and 1671, the issue of liquidated damages arises only if there has been a breach of agreement. In its motion UCB

---

[3]The trial court's amended order re class action issues of September 5, 1979, amending its order of August 22, 1979, defined the class of proper plaintiffs as follows: "All natural persons who are now residents of the State of California who have had nonbusiness checking accounts in any branch of defendant United California Bank in California, who have during the period from October 8, 1970 to June 30, 1978 had their checking account charged by said bank for non-sufficient fund charges, and in fact paid said charges, more particularly defined as the charge levied by defendant bank against a depositors' account when said depositor has written a check which has created or increased an overdraft or which has been rejected for insufficient funds ('NSF check'), where not covered by 'Balance Plus' Overdraft Protection."

In the same order the trial court stated the first issue common to both parties as follows: "In the contract of deposit between each class member and the defendant bank was there an implied covenant that said depositor would (will) not write checks which, in total amount, at time of presentation, exceed his balance or increase his overdraft and that for each said check (which when presented creates or increases an overdraft) the bank will charge his account an amount as liquidated damages or a penalty in violation of Civil Code section 1670?"

[4]The signature card agreement executed by a depositor upon opening an account with UCB states in pertinent part that the depositor agrees that "this account shall be carried as a ____ REGULAR ____ SPECIAL checking account, and shall be governed by the bylaws, rules, regulations and practices of the Bank in force from time to time, and shall be subject to any and all service charges now or hereafter established."

argued that "if plaintiffs cannot prove that there was an implied obliga-tion to not write NSF checks, then they have no theory upon which to base a recovery against defendant, and all of the other issues certified for trial become moot."

The trial court granted UCB's motion to bifurcate the trial. Plaintiffs then presented evidence on the issue whether the signature card agree-ment contains an implied promise not to write NSF checks.

Plaintiffs attempted to prove that an implied promise not to write NSF checks was incorporated in the signature card agreement because the agreement provided that the depositor's accounts would be governed by the "practices of the Bank in force from time to time. . . ." They in-troduced evidence of the bank's practices. Plaintiffs' expert on the banking industry, Dr. Michael R. Darby, testified in pertinent part that it was the general practice of banks to discourage NSF checks because "[p]roper financial management dictates that sufficient funds be on de-posit each time checks are written by a depositor," and that it "is the obligation of the customer not to write such a check."

When plaintiffs rested their case, UCB made a motion for nonsuit pursuant to Code of Civil Procedure section 581c, or in the alternative, for directed verdict in favor of UCB. This motion was denied without prejudice to renewal.

UCB then presented its case, introducing the testimony of bank per-sonnel to show that the bank did not regard UCB customers as being under a contractual obligation to refrain from writing NSF checks. When UCB rested its case, plaintiffs presented evidence in which they attempted to show that UCB in its own bank manual treated NSF charges as a penalty. UCB then renewed its motion for nonsuit or di-rected verdict. This motion was granted, the trial court finding that "there is no evidence of sufficient substance to support a verdict for plaintiff. . . ." Accordingly, the trial court issued an order of dismissal pursuant to Code of Civil Procedure section 581c in favor of UCB, and denied plaintiffs leave to amend their complaint.

ISSUE

■ Plaintiffs contend on appeal that the trial court erred in granting UCB's motion for nonsuit because plaintiffs, as a matter of law, pro-

duced evidence sufficient to support a verdict that the signature agreement beween plaintiffs and UCB contained an implied covenant not to write NSF checks and thus the charge was in effect a penalty.

DISCUSSION

"A nonsuit or directed verdict in favor of a defendant is proper when, disregarding conflicting evidence and indulging every legitimate inference in favor of plaintiff's evidence, there is no evidence of sufficient substantiality to support a decision in plaintiff's favor. [Citations.]" (*Hoffman* v. *Security Pacific Nat. Bank* (1981) 121 Cal.App.3d 964, 968 [176 Cal.Rptr. 14].)

In the instant case, plaintiffs attempted to prove that NSF charges imposed by UCB on its customers constituted an unlawful penalty within the meaning of former Civil Code section 1670.

Section 1670 at the time of trial stated that "[e]very contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in [former Civil Code section 1671]." Former Civil Code section 1671 allowed the parties to a contract to agree in advance "upon an amount which [would] be presumed to be the amount of damage sustained by a breach of [their contract]."[5]

By their terms, sections 1670 and 1671 together applied only to liquidated damage provisions which were to take effect when there had been a "breach of an obligation." (*Garrett* v. *Coast & Southern Fed. Sav. & Loan Assn.* (1973) 9 Cal.3d 731, 737 [108 Cal.Rptr. 845, 511 P.2d 1197].) In order for plaintiffs to prove that the NSF charges imposed by UCB constituted a penalty under sections 1670 and 1671, they were required first to prove that the signature agreement contained an implied promise by plaintiffs not to write NSF checks.

Generally, implied covenants are not favored in the law because they interfere with the parties' right to freely set such contractual terms as

---

[5]On July 1, 1978, the Legislature repealed section 1670 and amended section 1671 in order to express a new policy favoring liquidated damage provisions in contracts of this kind. (Civ. Code, § 1671, subds. (b) and (c).)

they choose. (*Walnut Creek Pipe Distributors, Inc.* v. *Gates Rubber Co.* (1964) 228 Cal.App.2d 810, 815 [39 Cal.Rptr. 767].)

In *Cousins Inv. Co.* v. *Hastings Clothing Co.* (1941) 45 Cal.App.2d 141, 149 [113 P.2d 878], the law concerning judicial authority to imply covenants into contracts was summarized as follows: ". . . (1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract. . . ."[6]

In the instant case, plaintiffs introduced the testimony of Dr. Michael R. Darby, a qualified banking expert, who testified in substance that the signature card agreement executed by plaintiffs constituted the agreement between UCB and plaintiffs; that the signature card agreement incorporates the practices of the bank as part of the contract; that it is a policy of UCB to discourage its depositor from writing NSF checks; and that the writing of an NSF check constitutes a breach of the depositor's obligation to the bank not to write such checks.

While Darby's testimony may have been sufficient to establish that UCB considered it an obligation of plaintiffs not to write NSF checks, it was not sufficient to establish *plaintiffs'* implied promise not to write NSF checks. Plaintiffs' express promise to pay "any and all service charges now or hereafter established" does not necessarily carry with it an implied promise to refrain from writing NSF checks. Since plaintiff did not introduce evidence sufficient to satisfy the requirements of *Cousins*, no covenant may be implied into the signature card agreement binding plaintiffs to refrain from writing NSF checks.

Plaintiffs attempted to prove that custom and usage in the banking industry prohibited the writing of NSF checks without prior agreement.

---

[6]In *Addiego* v. *Hill* (1965) 238 Cal.App.2d 842, 846 [48 Cal.Rptr. 240], the appellate court held that in implying a covenant "[t]he usual and reasonable terms found in similar contracts may be considered, unexpressed provisions of the contract may be inferred from the writing, external facts may be relied upon, and custom and usage may be resorted to in an effort to supply a deficiency if it does not alter or vary the terms of the agreement. [Citations.]" We perceive no conflict between the principles set forth in *Addiego* and the criteria stated in *Cousins*.

They argue that as a consequence, a promise not to write such checks should be implied as a term of the signature card agreement.

In *Hoffman* v. *Security Pacific Nat. Bank, supra,* 121 Cal.App.3d 964, 969, a case remarkably similar to the case at bench, the appellate court held that the "... statutes governing the obligations of banks and their depositors, which are incorporated into and become part of the contract between a bank and its depositors [citations], treat an overdraft as an application for advance credit rather than as a breach of an express or implied covenant. California Uniform Commercial Code section 4401 specifically authorizes a bank to pay overdrafts and to charge customers' accounts to recover amounts paid, even when payments result in overdrafts on the account. While a bank has a statutory obligation to honor any check drawn by a depositor for an amount not exceeding the balance in his account, and while the depositor has a contractual obligation to pay a service charge when he presents a NSF check, the depositor has no statutory or contractual obligation to refrain from drawing checks for amounts in excess of the balance in his account. (Cal. U. Com. Code, § 4401.)"

Plaintiffs in the instant case made no showing of industry custom which required inclusion of an implied covenant in the signature card agreement that was breached upon plaintiffs' negotiation of an NSF check.

■ ■■■ Accordingly, the trial court did not err in granting UCB's motion for nonsuit pursuant to Code Civil Procedure section 581c.[7]

---

[7]Plaintiff contends that the trial court erred in excluding certain evidence which plaintiff attempted to introduce in order to prove that NSF charges are actually a penalty. Plaintiffs' evidence would have included testimony concerning UCB's "Balance Plus" overdraft protection program and testimony indicating that UCB itself in its bank manual labels NSF charges a "penalty." Since the issue being tried was whether the signature card agreement contained plaintiffs' implied promise not to write NSF checks, the trial court properly excluded plaintiffs' evidence under Evidence Code section 352.

Plaintiffs also contend that the trial court erred in denying plaintiff leave to amend their complaint and prove that UCB's NSF charges violated the express provisions of the signature card agreement because they were, by UCB's own bank manual, a "penalty" charge, rather than a "service" charge permitted by the agreement. The claim involved the penalty aspects of UCB's service charges within the meaning of Civil Code section 1670. Since the trial court properly determined that there was no contractual obligation, this issue, which had been deferred, was rendered moot.

DISPOSITION

The judgment of the trial court is affirmed. Each party to bear its own costs on appeal.

Dalsimer, Acting P. J., and Cooperman, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 8, 1982. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.