DANIELS, Appellant,

v.

PNC BANK, N.A., Appellee.

[Cite as *Daniels v. PNC Bank, N.A.* (2000), 137 Ohio App.3d 247.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990291.

Decided March 10, 2000.

*Charles E. Reynolds, David M. Kothman, Mark D. Fischer* and *Mark M. Sandman,* for appellant.

*Susan Grogan Faller, Robert D. Lewis, Jr.,* and *Darryl J. May,* for appellee.

GORMAN, Presiding Judge.

This is an appeal from a putative class action in which the plaintiff-appellant, Joshlyn Daniels, claimed that PNC Bank, N.A., engaged in a "check sorting and posting scheme specifically for the purpose of generating additional revenue at the expense of its own 'valued' customers." The alleged scheme involved PNC's practice of sorting checks in descending order—*i.e.*, from largest to smallest—and thereby returning the greatest number of checks in the event of insufficient funds and generating the greatest amount of fees to be paid by the customer and collected by the bank. Daniels alleged on behalf of the putative classes [1] that this practice violated the Ohio Consumer Protection Act (a claim later withdrawn), breached a duty of good faith and fair dealing, constituted unconscionable

---

1. There were three putative classes: a DIR class consisting of all Ohio non-business checking-account customers who had paid "deposit item returned" penalties over the last fifteen years; a NSF class consisting of all Ohio non-business checking-account customers who had paid "non-sufficient fund" penalties over the last fifteen years; and a DSP subclass consisting of all Ohio non-business customers who had paid "non-sufficient fund" penalties that would not have been posted but for the sorting program employed by PNC.

conduct, and was tantamount to the collection of liquidated damages. For the reasons that follow, we affirm the trial court's dismissal of the complaint.[2]

## I

In her first assignment of error, Daniels argues that the trial court erred by dismissing her claim that the bank's descending-order sorting program violated a duty of good faith and fair dealing arising from PNC's account agreement with its customers. In this regard, both parties agree that the relevant language of the agreement states, "If there are sufficient funds to cover some but not all of your withdrawal orders, we will allow those withdrawals that can be paid, in any order convenient to us." Daniels argues that this language, despite its express authorization for PNC to pay the orders that can be paid "in any order convenient to us," should either be considered ambiguous or be construed as "an outright promise to pay" all withdrawals in an ascending rather than descending order.

First, we do not perceive any ambiguity in the language "we will allow those withdrawals that can be paid, in any order convenient to us." According to Daniels, the last clause, "in any order convenient to us," is "nonsensical and renders the majority of the statement a nullity." This is true, however, only if one chooses to ignore the plain meaning of the words and obvious construction of the sentence. The words "in any order convenient to us" are clearly intended to modify "withdrawals that can be paid." As for the argument that these words somehow constitute an "outright promise" to pay the checks in an ascending order, we find this to be the "nonsensical" construction.

Second, since the claim was not for breach of contract, but for the violation of a duty of good faith and fair dealing, it must be pointed out that the law specifically states that items may be accepted, paid, certified, or charged to the indicated account "in any order." R.C. 1304.29. The official comment to this statutory section states:

"As between one item and another no priority rule is stated. This is justified because of the impossibility of stating a rule that would be fair in all cases, having in mind the almost infinite number of combinations of large and small checks in relation to the available balance on hand in the drawer's account; the possible methods of receipt; and other variables. Further, the drawer has drawn all the checks, the drawer should have funds available to meet all of them and has no basis for urging one should be paid before another * * *."

---

**2.** We have *sua sponte* removed this case from the accelerated calendar.

Daniels, therefore, has the insurmountable task of persuading us that a statutorily authorized procedure constitutes an act of bad faith and unfair dealing. An almost identical claim was rejected in *Smith v. First Union Natl. Bank of Tennessee* (Tenn.App.1997), 958 S.W.2d 113, in which the plaintiff claimed that the defendant bank's descending-order sorting program was adopted in bad faith for the purpose of maximizing fees. The court ruled that because the Tennessee counterpart of R.C. 1304.29 implicitly authorized the bank to adopt the descending-order sorting program by allowing it to adopt "any order," there was, as a matter of law, no breach of contract and no evidence of bad faith or unfair dealing.

We hold, therefore, that the trial court correctly determined in this case that the descending-order sorting program did not violate the account agreement, as that agreement expressly authorized PNC to adopt any order that it found convenient. Furthermore, because the law grants PNC the authority to process the checks in that order, we hold that Daniels's claim of bad faith and unfair dealing failed as a matter of law.

## II

In her second assignment of error, Daniels argues that, even if it is assumed that the fees imposed by the bank were contemplated in the account agreement, the trial court still erred by dismissing her liquidated-damages claim under Civ.R. 12(B)(6). According to Daniels, the writing of a check on insufficient funds, as well as the deposit of items that are returned, is a breach of the account agreement for which the bank imposes inordinate penalties. In support of this argument, Daniels contends that the cost to PNC to process a check based upon insufficient funds, for which it charges a customer $25, is between $.50 and $1.50, and that the cost to PNC of processing a returned deposited check, for which it charges a customer $8, is $.65.

PNC argues, on the other hand, that unenforceable penalties stem from breaches of contract and that an overdraft or deposit of a returned third-party check is not a breach of the account agreement. From the bank's perspective, "While not encouraged, an overdraft or deposit of a return item is contemplated by the Account Agreement, which specifies what PNC's rights are in processing such items but in no way characterizes them as breaches of the agreement." In support of its argument, PNC cites several appellate court decisions reaching this conclusion: *Saunders v. Michigan Ave. Natl. Bank* (1996), 278 Ill.App.3d 307, 214 Ill.Dec. 1036, 662 N.E.2d 602; *Jacobs v. Citibank, N.A.* (1984), 61 N.Y.2d 869, 872, 474 N.Y.S.2d 464, 465–466, 462 N.E.2d 1182, 1183–1184; and *Shapiro v. United California Bank* (1982), 133 Cal.App.3d 256, 184 Cal.Rptr. 34.

Having reviewed the authorities cited by both Daniels and PNC, we are convinced that the cases presented by PNC, being more directly on point, represent the weight of authority and, more importantly, articulate the correct view. Overdrafts and returned deposited items, being within the contemplation of the parties and provided for within the account agreement, cannot be considered breaches of contract, and since there is no breach, the fees imposed cannot be considered penal damages. See *Jacobs, supra,* at 872, 61 N.Y.2d 869, 474 N.Y.S.2d 464, 465–466, 462 N.E.2d 1182, 1183–1184.

Furthermore, because of the legal impediment to Daniels's liquidated-damages claim, we hold that the trial court did not err by disposing of it under Civ.R. 12(B)(6). Daniels's second assignment of error is, therefore, overruled.

### III

In her third assignment of error, Daniels argues that the trial court erred by dismissing her claim of unconscionability under Civ.R. 12(B)(6). According to Daniels, she should have been allowed to conduct discovery and develop evidence that the fees are unconscionable in that they "grossly exceed actual processing costs and reasonable profits." PNC responds that the trial court correctly dismissed this claim because (1) a claim of unconscionability cannot seek affirmative relief such as the restitution sought by Daniels; and (2) a claim of unconscionability applies only where a party to the contract lacked meaningful choice, and the complaint failed to acknowledge that Daniels could have simply chosen to bank elsewhere with less onerous fees.

In resolving this claim, we are persuaded by the analysis of the court in *Johnson v. Norwest Corp.* (May 7, 1999), Minn.D.C. No. CT 98–13246, unreported, a case cited by PNC. Addressing an identical claim, the *Johnson* court first noted that regulations of the federal Office of the Comptroller of the Currency provide that non-interest fees and charges are reasonable if set with consideration of four factors, including "deterrence of misuse by customers of banking services." Section 7–40002(b), Title 12, C.F.R. The court next observed that the OCC fee-setting regulations gave banks "wide discretion in determining a proper fee amount." With specific respect to the $20 fee charged by Norwest, the court described it as "not so exorbitant as to shock the conscience." The court reasoned further:

"The fee amount was disclosed to Plaintiffs in the instant suit. Although the Plaintiffs could incur relatively large fees, those fees were known to the Plaintiffs at the inception of the contract. Moreover, because the practice of high-low posting is allowed by statute, it cannot be said to be itself unconscionable. Perhaps most importantly in the context of an unconscionability analysis, the Plaintiffs could avoid the scheduled fees by simply refraining from writing checks that exceeded the amounts they had on deposit. In light of the fact that the

Plaintiffs in a very real sense had the power to control whether the fees would ever be assessed, Norwest's disclosed $20 fee and high-low posting practice cannot be deemed unconscionable."

Adopting this analysis, we hold that Daniels cannot prove any set of facts that would establish a claim of unconscionability. As the *Johnson* court implied, a person who chronically writes bad checks does not have clean hands to seek equitable relief from the resulting fees, since such a person is engaged in bad banking practices and is merely experiencing the intended deterrent effect of those fees. The fees will stop when the customer adopts better banking practices. The situation is entirely under the control of the banking customer, who need not pay any fees if he or she maintains sufficient funds on account or arranges for some sort of overdraft protection. Given this power of self-control, we hold that there is no possible claim of unconscionability.

IV

Accordingly, we overrule Daniels's three assignments of error. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN and SHANNON, JJ., concur.

RAYMOND E. SHANNON, J., retired, of the First Appellate District, sitting by assignment.