# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA R. GLASKE,

       Plaintiff-Appellee,

v

INDEPENDENT BANK CORPORATION,

       Defendant-Appellant.

UNPUBLISHED
January 21, 2016

No. 323167
Wayne Circuit Court
LC No. 13-009983-CZ

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Linda R. Glaske, filed a class action complaint in Wayne Circuit Court against her former bank, Independent Bank Corporation. Like many other disgruntled bank customers around the country, Glaske challenged a short-lived banking policy of batching and reordering customers' transactions so as to maximize overdraft charges. Glaske's legal claims mirror those made in federal multi-district litigation involving more than a dozen national banks that ultimately settled for more than $1 billion. Independent sought summary disposition pursuant to MCR 2.116(C)(8) very soon after Glaske filed suit, before any discovery could be obtained. The circuit court denied the motion, leading to Independent's interlocutory application for leave to appeal. We now affirm.

## I. BACKGROUND

Glaske formerly maintained a checking account at defendant Independent Bank. She objected to the bank's policy of posting items to her account at the end of each business day in order from highest value to lowest. (Independent Bank has since stopped the practice, as have banks nationwide.) Many banks used this procedure to increase the insufficient fund and overdraft fees they could charge their customers. For example, if a customer had $300 in her checking account and had three outstanding checks or debits for $75, $60, and $250, the bank would post the $250 item first so it could charge an overdraft fee for the remaining two items. If it posted the items from lowest to highest value, the bank would only be able to collect one fee. In another effort to increase profits, many banks stopped alerting their customers of impending overdrafts. Similarly, the banks deliberately elected against declining debit card transactions

when the transaction would overdraw the account. These actions permitted the banks to charge fees to customers when they made an overdraft purchase without giving the customers the option to forego the sale and the attendant fee.[1]

After closing her account, Glaske filed suit against Independent. In her lengthy complaint, Glaske described Independent's practices in great detail. She compared Independent's actions to those of the various banks previously sued in federal court, a consolidated lawsuit that resulted in over $1 billion in settlements.[2] Overall, Glaske challenged Independent's decision to wait until the end of the business day to post pending items to her checking account despite that point-of-sale (POS) and ATM transactions were automatically relayed to the bank. As a result, customers could not access real-time, accurate balance information. Further, when posting items Independent reordered them from highest value to lowest, paring down the account balance more quickly and thereby imposing multiple fees for overdrawn accounts. Glaske emphasized that Independent approved ATM withdrawals and POS transactions knowing that the transactions would result in an overdraft, without notifying the customer and offering an opportunity to cancel the withdrawal of funds. She further complained that Independent failed to provide its customers with adequate and accurate information about its overdraft policies.

Glaske's complaint included three counts: breach of contract, unconscionability, and unjust enrichment. In Count I, Glaske alleged that Independent breached its contract with her and other customers, and breached its covenant of good faith and fair dealing. Glaske contended that Independent's actions violated contract provisions allowing overdraft fees "only on returned items" and promising that "checks will be posted in check number order." Glaske continued that Independent breached the covenant of good faith and fair dealing "through its overdraft policies and practices."

---

[1] This general background information is drawn from *In Re Checking Account Overdraft Litigation*, 694 F Supp 2d 1302 (SD Fla, 2010). This case involved several consolidated class action lawsuits filed in federal courts against numerous banks nationwide.

[2] We accept the settlement figure cited by Glaske in her pleadings. Although the settlement documents themselves are confidential, media outlets have reported that Wells Fargo Bank paid over $200 million, Bank of America $410 million, and Capital One $31.8 million. See "Excessive Bank Overdraft Fees," Lawyers and Settlements.com, <https://www.lawyersand settlements.com/lawsuit/excessive-bank-overdraft-fees.html?fp=1&utm_expid=3607522-10.7z QgoaZSRC-6j_IrrLlOsA.1&utm_referrer=https%3A%2F%2Fwww.google.com %2F#.VnLH2_krJpg> (accessed December 17, 2015). Many banks have created websites to assist the class members and report the settlement figures. Citizens Bank/Charter One reached a settlement for $137.5 million. See < https://www.citizensoverdraftsettlement.com/> (accessed December 17, 2015). U.S. Bank settled for $55 million. <http://www.usbankoverdraftsettlement.com/> (accessed December 17, 2015). PNC Bank settled for $90 million. See <https://www.pncbankoverdraftsettlement.com/en> (accessed December 17, 2015). These settlements alone amount to over $900 million. As numerous other large, national banks were included in the litigation, Glaske's allegation appears plausible.

In Count II, Glaske contended that Independent's overdraft policies and practices were unconscionable because the bank did not 1) adequately inform customers of their right to opt out of the overdraft program, 2) require customers' affirmative consent to the program, and 3) alert customers that a transaction would create an overdraft and give them the option to cancel the transaction.

The third and final count raised in Glaske's complaint was for unjust enrichment. Glaske contended that if Independent's contract was found unenforceable, the doctrine of unjust enrichment "will dictate that Independent disgorge all improperly assessed overdraft fees."

As noted, Independent sought summary dismissal of Glaske's complaint pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) before any discovery could be had. Independent insisted that its actions were fully compliant with its contractual duties. The bank contended that Michigan does not recognize an independent cause of action for breach of the covenant of good faith and fair dealing, requiring the dismissal of much of Glaske's breach-of-contract claim. Similarly, Independent argued that unconscionability is a defense to the enforcement of a contract, but cannot be raised as an affirmative cause of action. Finally, Independent sought dismissal of Glaske's equitable unjust enrichment claim as such relief is not available in the face of an express contract.

Glaske responded by discussing the combined, multidistrict litigation heard in the southern district of Florida regarding the various class actions filed nationwide—*In re Checking Account Overdraft Litigation*. Glaske emphasized that the district court judge had denied the various defendant banks' motions for summary judgment in that case, and approved the certification of various classes and subsequent settlements. Glaske further highlighted that the Northern District of California had conducted a trial in a similar case and found the very practices complained of here to be "gouging and profiteering." See *Gutierrez v Wells Fargo Bank, NA*, 730 F Supp 2d 1080, 1104 (ND Cal, 2010), aff'd in part, rev'd in part, and remanded 704 F3d 712 (CA 9, 2012).

Glaske continued that as discovery was ongoing, it was unclear whether the documents she attached to her complaint were the full contract between the parties. It was similarly unclear whether all the necessary documents were actually given to customers. And those documents that were available were ambiguous at best. In relation to her unconscionability count, Glaske asserted that she raised the claim to invalidate the contract and seek equitable relief, not as a separate ground for reparation. The unjust enrichment claim was an alternative count that would only support relief if the contract were invalidated, Glaske concluded.

The circuit court rejected Independent's bid for summary disposition in most respects. The court found the contract documents ambiguous and therefore in need of interpretation, although it agreed that Michigan does not recognize actions for breach of the covenant of good faith and fair dealing. The court discerned no ground to dismiss the unconscionability count and found unjust enrichment a properly raised alternative ground for relief. This appeal followed.

## II. BREACH OF CONTRACT

The circuit court properly rejected in part Independent's bid to dismiss Glaske's breach-of-contract claim.[3]

> We review a trial court's decision on a motion for summary disposition de novo. *Wayne Co v Wayne Co Retirement Comm*, 267 Mich App 230, 243; 704 NW2d 117 (2005). A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted." *Begin v Mich Bell Tel Co*, 284 Mich App 581, 591; 773 NW2d 271 (2009). We must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. *Id.* The motion should be granted only if no factual development could possibly justify recovery. *Id.* [*Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).]

We also review de novo questions of contract interpretation. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003).

> In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law. [*In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008) (citations omitted).]

If a contract is ambiguous, however, the rules of construction come into play. Our Supreme Court has emphasized that a finding of ambiguity must rest on a determination that the words used in the contract are "equally susceptible to more than a single meaning." *Stone v Williamson*, 482 Mich 144, 150-151; 753 NW2d 106 (2008). An ambiguity may also be found when two contractual provisions "irreconcilably conflict with each other." *Klapp*, 468 Mich at 467. See also *In re Application of the Detroit Edison Co to Increase Rates*, 495 Mich 884 (2013).

### A. SCOPE OF THE CONTRACT

Glaske attached several documents to her complaint that are part of her contract with Independent Bank. Glaske correctly argues that other documents may also form part of the contract and that discovery is necessary to flesh out the totality of the agreement. The documents attached to the complaint incorporate other documents by reference and do not clearly define the scope of the writings that complete the contract.

---

[3] Glaske did not file a counter-application for leave to appeal the court's dismissal of her claims based on the covenant of good faith and fair dealing.

Glaske attached to her complaint the 2007 and 2010 Deposit Account Agreements applicable to her account. In the "general agreement" provisions, the agreements provided that the documents "govern[] your account" "along with any other documents applicable to your account" (2007 agreement) and advised, "Your account is also governed by other applicable documents" (2010 agreement). Glaske also attached the Deposit Account Terms and Conditions, which states:

> The following sections are applicable to all Accounts except as otherwise specified. All of the following terms and conditions, together with the Account Agreement, Schedule of Services and Fees, and any applicable supplements or amendments, including changes caused by new or modified laws or regulations . . . provided at Account opening or thereafter will govern the operation of your Account. You agree to all of these Terms when you sign the Account Agreement and when you keep your Account open after you receive the Terms or subsequent amendments.

Finally, Glaske included an Electronic Fund Transfer Agreement (EFTA), which instructs, "Your account is also governed by the terms and conditions of other applicable agreements between you and the bank."

These quoted provisions highlight the need for discovery before summary disposition of Glaske's contract claim should be considered. The Deposit Account Agreements emphasize that additional documents govern the parties' relationship. Each version contains a nonexhaustive list of examples of other applicable documents, meaning that other documents likely exist. The Terms and Conditions go a step further and describe that the documents forming the parties' agreement will evolve and could be sent to the customer at any time. A motion under (C)(8) cannot be granted if "factual development could possibly justify recovery." *Zaher*, 300 Mich App at 139, citing *Begin*, 284 Mich App at 591. It is likely that discovery will reveal additional documents governing Glaske's account. Accordingly, the circuit court properly determined that summary disposition was improper, or at least premature, when requested.

## B. CONFLICTING DOCUMENT PROVISIONS

In addition, Glaske alleged facts which, if proven, could support her underlying legal claim. As aptly noted by Independent, Glaske alleged that the bank breached its contract with her by posting checks (not electronic transactions) in order from highest to lowest value and by charging fees on items paid that caused an overdraft, rather than just on items that were returned for insufficient funds. The documents attached to Glaske's complaint revealed inconsistent terms sufficient to overcome the (C)(8) motion in these regards.

In relation to the posting order of checks, Independent's Deposit Account Terms and Conditions provide:

NON-SUFFICIENT FUNDS – *Checks will be posted to your Account in check number order upon day of presentment*, however certain transactions, such as items cashed at the Bank, ACH items, ATM [illegible], and wire transfers, may be posted before checks. *We reserve the right to change this posting order without notice.* [Emphasis added.]

The 2007 and 2010 Deposit Account Agreements provide, in relevant part, "We *may process checks* and any other debit activity *in any order, including from highest dollar amount to lowest dollar amount*." (Emphasis added.)

These provisions include two key verbs: "will" and "may." It is well established under Michigan law that "may" is a permissive term. See *In re Bail Bond Forfeiture*, 496 Mich 320, 328; 852 NW2d 747 (2014). "Will" has several meanings, however. Of relevance here, "will" can "express futurity" and can also "express a command, exhortation, or injunction." *Merriam-Webster's Collegiate Dictionary* (11th ed, p 1433). The phrasing is also important. "Checks will be posted" is passive future tense. Its active equivalent would read, "Independent will post checks." See *Passive Verb Tenses*, Purdue Online Writing Lab, available at <https://owl.english.purdue.edu/owl/resource/601/02/> (accessed December 7, 2015).

Accordingly, the non-sufficient funds provision in the Deposit Account Terms and Conditions incorporates Independent's promise to post checks in numeric order on the day of presentment. This is a mandatory contractual term. Independent reserved the right to change that policy without notice. Although Independent claims it decided to change the posting order, it never revised its written materials and continued to present these same terms and conditions to its customers, advising new customers that it was required to post checks in numeric order on the date of presentment. The pleadings therefore suffice to allege a cognizable claim that Independent breached its written promise to post in numeric order by instead posting checks in high-to-low order.

Moreover, Glaske established a contractual ambiguity by citing the 2007 and 2010 Deposit Agreements which indicated, "We may process checks and any other debit activity in any order, including from highest dollar amount to lowest dollar amount." At the same time that Independent was informing its customers that "[c]hecks *will* be posted" in numeric order, (emphasis added) the bank indicated that it was permitted to post checks (as well as other items) in *any* order. At the very least, this creates a contractual ambiguity, as the agreements appear to irreconcilably conflict. In resolving that ambiguity, the court could rely on the precept that more specific provisions, like that expressly covering only checks, govern over more general provisions, like the permissive provision governing all debit activity. See Restatement 2d Contracts, § 203(c), p 93 ("[S]pecific terms and exact terms are given greater weight than general language[.]"); 5 Corbin, Contracts, § 24.23, p 253 ("If the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific term should usually be held to prevail over the more general term."); 11 Williston, Contracts (4th ed), § 32:10, pp 739-740 ("When general and specific clauses conflict, the specific clause governs the meaning of the contract.").

-6-

Given the conflicting contract terms, that Independent never amended its Terms and Conditions and continued to inform customers that it would post checks in numeric order, and that other documents may exist that are part of the parties' contract, the circuit court correctly determined that summary disposition was inappropriate in relation to the posting order of checks.

The contract documents attached to Glaske's complaint are not quite as inconsistent with regard to when overdrafted items can be paid and when overdraft fees can be charged. The attached Deposit Account Terms and Conditions provide:

> If the Account lacks sufficient available funds to pay a check, in-person withdrawal, ATM withdrawal, or other electronic means presented for payment, at the Bank's complete discretion, we may elect to pay such check, in-person withdrawal, ATM withdrawal, or other electronic means OR return or refuse to pay such check, in-person withdrawal, ATM withdrawal, or other electronic means for non-sufficient funds (NSF). The Bank will assess a fee for each check, in-person withdrawal, ATM withdrawal, or other electronic means that is returned or refused due to NSF or if paid causes an overdraft on your Account, as provided in the Schedule of Fees applicable to the Account. . . .

The 2007 Deposit Agreement provides:

> 12. **Fees, Service Charges and Balance Requirements.** You agree you are responsible for any fees, charges, balance, or deposit requirements as stated in the Disclosures.

> 13. **Non-Sufficient Funds.** If your account lacks sufficient available funds to pay a check, preauthorized transfer, or other debit activity presented for payment, we may return such item for non-sufficient funds and will charge you a fee as provided in the Disclosures, subject to our Overdraft Policy, if any. . . .

Independent Bank's 2010 Deposit Account Agreement includes identical provisions. The Overdraft Policy, however, was not attached to the complaint and likely will be obtained during discovery.

The attached documents permit the Bank to pay items despite that payment could cause an overdraft and to assess a fee against the account holder, despite Glaske's insistence to the contrary. The deposit account agreements grant Independent the discretion—"may"—to refuse items but does not preclude payment of items that could cause an overdraft. The Deposit Agreements include a proviso that decisions to honor overdraft items will be "subject to our Overdraft Policy." Because that policy has not yet been produced, it is impossible to determine whether it, too, creates an ambiguity. Although this ground is not as likely to succeed in the end, Glaske's allegations and the attached documents were sufficient to state a claim upon which could be granted and summary disposition would have been improper.

III. UNCONSCIONABILITY

We further discern no error in the circuit court's denial of Independent's motion to summarily dispose of Glaske's unconscionability claim. It is important to note at the outset that Glaske alleges that Independent's contract provisions relating to checks *and debit card activity* were unconscionable, unlike in her breach-of-contract claim.

Contrary to Independent's argument, Glaske's unconscionability count does not constitute a separate ground for damages. Rather, it is a ground to invalidate the contract and seek reparation under the unjust enrichment count. Other courts in similar cases have equated a plaintiff's unconscionability claim with a request for a declaratory judgment that the contract is unconscionable, opening the door for the crafting of equitable relief. See *Hanjy v Arvest Bank*, 94 F Supp 3d 1012, 1031-1032 (ED Ark, 2015); *In re Checking Account Overdraft Litigation*, 694 F Supp 2d at 1318. Although Glaske did not use the term "declaratory judgment," we are not bound by the labels used by a party and must identify a claim by its substance. See *In re Bradley Estate*, 494 Mich 367, 388; 835 NW2d 245 (2013). And Michigan courts permit plaintiffs to raise unconscionability as a ground to invalidate a contract in their complaints, not just as a defense when the other party seeks to enforce the contract. See *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 80; 719 NW2d 890 (2006).

Moreover, Glaske alleged sufficient facts to overcome Independent's summary disposition motion on the merits. As described by this Court in *Allard v Allard*, 308 Mich App 536, 553; 867 NW2d 866 (2014):

> An unconscionable contract is not enforceable. "In order for a contract or contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present."

> Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. If, under a fair appraisal of the circumstances, the weaker party was free to accept or reject the term, there was no procedural unconscionability. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience. [*Id.* at 144 (citations omitted).]

In *In re Checking Account Overdraft Litigation*, 694 F Supp 2d at 1319-1320, the federal district court for the southern district of Florida denied the banks' motions for summary disposition of the plaintiff customers' unconscionability claim, finding that the customers adequately pleaded procedural unconscionability. We find that analysis instructive:

> Although Plaintiffs do not allege they were coerced into accepting the overdraft protection terms, the disparity in sophistication and bargaining power between Plaintiffs and Defendants is obvious. The terms at issue were contained in

voluminous boilerplate language drafted by the bank. If Plaintiffs did disagree with the terms, there was no meaningful opportunity to negotiate with the bank; rather, the bank would simply refuse to open an account for the customer as Defendants' counsel orally argued: ("That's why these terms are nonnegotiable, because it's automated."). . . . Moreover, Plaintiffs have alleged that they were not notified they had the option to decline the overdraft protection service (in which case the bank would simply decline to pay the merchant who presented the item for payment, rather than paying and charging the customer an overdraft fee), when in fact they did have that option. Thus, the Court concludes the Plaintiffs have sufficiently alleged procedural unconscionability. [*Id.*]

The only mention in the attached documents that Independent's overdraft protection was optional is found in the EFTA. In the EFTA, Independent informed customers that they were required to contact the bank to opt out of the overdraft plan:

> NOTICE REGARDING EFT CARD SERVICES – The Bank may honor any card based transaction that may overdraw your Account including ATM withdrawals and transfers as well as any PIN-based, PIN-less transaction or VISA transaction (signed, internet, or telephonic). The Bank may assess a fee for each paid debit transaction resulting in an overdraft as provided in the Schedule of Fees applicable to the Account. Additionally, you agree to reimburse the Bank immediately, upon demand, for the daily fee for Accounts that are not promptly repaid. Purchases and/or cash withdrawals may be subject to prior authorization from the Bank. Authorization may be denied if the amount of all outstanding authorizations exceeds daily or other limits established by us. *If you elect to have the Bank decline all ATM withdrawals and transfers as well as a PIN-based, PIN-less transaction or VISA transaction (signed, internet, or telephonic) if your Account does not have a sufficient balance to cover the requested transaction, you are responsible for contacting us. . . .* [Emphasis added.]

The EFTA is but one of several documents that form "voluminous boilerplate language drafted by the bank" that the customer must accept in order to do business with Independent. As in the federal suit, there is no room for negotiation. As not all customers accept and use a debit card, and therefore have no reason to review the EFTA, there is no guarantee that all customers are advised of their ability to opt out of the overdraft plan. Moreover, as noted in Glaske's general allegations, requiring a customer to opt out rather than opt in, especially absent the provision of a clear program description, is against banking best practices. See American Banking Association, *Overdraft Protection a Guide for Bankers* (May 23, 2012), p 18.

We also find instructive the federal court's analysis of a similar substantive unconscionability claim:

> The standard for substantive unconscionability has been articulated in slightly different ways, but one representative formulation is the following: A term is substantively unconscionable if it is so "outrageously unfair as to shock the judicial conscience," or it is one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would

accept on the other." [*Bland v Health Care & Retirement Corp of America*, 927 So 2d 252, 256 (Fla Ct App, 2006)] (quotations and citations omitted). To make that determination, courts should consider "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Jenkins v First [America] Cash Advance of [Georgia], LLC*, 400 F3d 868, 876 ([CA 11], 2005) (quotations and citations omitted). Defendants argue that the high-to-low posting practice cannot be substantively unconscionable because it is a standard industry practice that is expressly endorsed by the UCC. See [*White v Wachovia Bank, NA*, 563 F Supp 2d 1358, 1370 (ND Ga, 2008)] (high to low posting practice not substantively unconscionable because the practice is consistent with the UCC); *Daniels v PNC Bank, NA*, 137 Ohio App 3d 247[;] 738 NE2d 447, 451 ([]2000) ("[B]ecause the practice of high-low posting is allowed by [the UCC], it cannot be said to be itself unconscionable."). In response, Plaintiffs argue that no reasonable person would have agreed to allow the banks to post debits in a manner designed solely to maximize the number of overdraft fees. They also argue that the amount of overdraft fees is unconscionably excessive because the fees are not reasonably related to the costs or risks associated with providing overdraft protection. See *Maxwell v Fidelity Fin Servs*, 184 Ariz 82[;] 907 P2d 51, 58 ([]1995) ("Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."). Finally, Plaintiffs argue that this analysis is highly fact dependent and cannot be resolved on a motion to dismiss.

The Court finds that Plaintiffs have sufficiently pled substantive unconscionability. The Complaints state that deposit agreements contained contractual terms regarding overdraft protection that had the purpose and effect of allowing Defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees charged to Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service. Moreover, Defendants are not entirely correct when they state that high-to-low posting is expressly condoned by the UCC. As discussed in the above section, the provision they rely on, section 4-303(b), applies only to paper checks, not the electronic debits that are the subject of this lawsuit. Although the Court recognizes that the UCC commentary suggests that courts may apply the UCC provisions by analogy, this is the exact set of circumstances in which the analogy breaks down. With paper checks, the customer gives a check to the merchant and leaves with the merchandise. The merchant then, at some unspecified time in the future, takes the check to his or her bank, which then presents the check to the customer's bank for payment. This guaranteed time lapse increases the risk to the bank, the merchant, and the customer that, in the intervening time period, there will not be sufficient funds in the account to cover the check. Thus, banks are far more justified in adopting a specific check posting order, providing overdraft services, and charging the customer an overdraft fee to account for the risk of insufficient funds. With electronic debit cards, however, the banks can know, at least in many

circumstances, instantly whether there are sufficient funds and can decline the transaction immediately, decreasing the risk to all parties and obviating the need to "hold" the debit transactions for a period of time and then post them in a specific order. Thus, Defendants' reliance on UCC section 4-303(b) to defeat substantive unconscionability is misplaced. [*In re Checking Account Overdraft Litigation*, 694 F Supp 2d at 1320-1321.]

Similarly, following a trial, a federal district court found that a bank's "true motivations behind the high-to-low switch" and related policies were "gouging and profiteering." Such policies, that court found, were adopted to boost overdraft fee revenue at the expense of unsuspecting customers. *Gutierrez*, 730 F Supp 2d at 1104.

There is no real difference between the allegations raised in Glaske's complaint and the allegations underlying *In re Checking Account Overdraft Litigation* and *Gutierrez*. Glaske alleged that Independent made several policy decisions to boost overdraft fee revenue and failed to keep its customers adequately informed of those policies. The allegations were sufficient to state a claim on which relief may be granted, and the circuit court properly refused to dismiss this count.

## IV. UNJUST ENRICHMENT

Finally, the circuit court properly refused to dismiss Glaske's alternative claim for equitable relief. In Michigan, a party is permitted to plead inconsistent claims. MCR 2.111(A)(2)(b). It is well established that a plaintiff may raise a breach-of-contract claim and allege in the alternative that a contract is invalid, meriting equitable relief. See *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 199; 729 NW2d 898 (2006). Accordingly, Independent's claim that the presence of an express contract requires dismissal of Glaske's unjust enrichment claim at this early point in the proceedings is misguided. If the contract is found unconscionable and thereby invalidated, Glaske may be able to establish entitlement to relief under the doctrine of unjust enrichment.

On the substantive merits of Glaske's allegations, we again find instructive *In re Checking Account Overdraft Litigation*, 694 F Supp 2d at 1321-1322:

Defendants' second argument is that Plaintiffs fail to allege circumstances under which it would be unjust for Defendants to retain the benefit that they have allegedly received, chiefly because the overdraft fees are specifically provided for in the contracts. The Court disagrees. Plaintiffs have alleged sufficient facts— that, among other things, Defendants manipulated the posting order of debit transactions in bad faith so as to maximize the number of overdraft fees incurred—which could lead a reasonable factfinder to conclude that it would be unjust to retain the benefit of those fees.

Glaske raised the same claim here. She asserted that Independent manipulated its customers' accounts to unconscionably rack up fees. Just as in the federal suit, if Glaske successfully challenges the validity of the contract, there are potential grounds for equitable

relief. Accordingly, there was no support for dismissing this alternative basis for relief at the onset of the proceedings.

We affirm.

/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly