**DESTEC ENERGY, INC., Destec Operating Company, Cogen Lyondell, Inc., and Lyondell Petrochemical Company, Appellants,**

v.

**HOUSTON LIGHTING & POWER COMPANY, Appellee.**

No. 03–97–00067–CV.

Court of Appeals of Texas, Austin.

April 2, 1998.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

Appellants Destec Energy, Inc., Destec Operating Company, Cogen Lyondell, Inc., and Lyondell Petrochemical Company (collectively "appellants") challenge the trial-court judgment in favor of Houston Lighting & Power Company ("HL & P"). The court ruled that appellants could not avoid the requirement of obtaining a certificate of convenience and necessity ("CCN") before generating and distributing electricity as planned. In seven points of error, appellants challenge various findings and conclusions of the trial court. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Lyondell Petrochemical Company ("Lyondell") owned and operated a large petrochemical plant in Channelview, Texas on the Houston Ship Channel. Lyondell bought its electric power from HL & P. Destec Energy, Inc. ("Destec") and its subsidiary Cogen Lyondell, Inc. ("CLI") owned and operated a nearby facility that generated electric power and sold it to various customers, including to utilities for resale. At that time, Lyondell began considering the possibility of utilizing statutory "self-use" and "cogeneration" exemptions by building an electric-power generation facility at its plant in an effort to reduce electricity costs. *See* Tex. Util. Code Ann. ("Code") § 31.002(1)(F) (West 1997)[1] (exempting certain types of operations from regulation as "public utilities"). Lyondell received a number of proposals for constructing or leasing various facilities. In late 1994, Lyondell began negotiating with Destec for the acquisition of a portion of the existing facility under Destec's control. After much negotiation, Lyondell and CLI, a Destec subsidiary, formed the Channelview CoGen General Partnership (the "Partnership") to sublease a portion of the facility from CLI.

Unlike other proposals, this arrangement offered Lyondell an almost immediate source of electricity, a much smaller capital outlay, and cost certainty. Lyondell's only major capital expense was the acquisition of a right-of-way for, and construction of, a two-and-a-half-mile transmission line from the facility to the plant. Under the Partnership Agreement, CLI owned an 88% interest in the Partnership, while Lyondell owned a 12% interest. For all intents and purposes, CLI would manage the facility on behalf of the Partnership for a fixed monthly fee. The partners would make monthly payments to cover each partner's share of the fixed management fees and the variable operating, maintenance, and fuel costs. The Partnership would transfer electricity as an in-kind distribution to the partners Lyondell and CLI. CLI agreed to indemnify Lyondell from most third-party, environmental, and other claims. The only purpose of the Partnership was the generation of electricity for the part-

---

1. The present case was tried, and the appellate briefs were filed, before September 1, 1997, when the Utilities Code replaced the Public Util. Regulatory Act of 1995, 74th Leg., R.S., ch. 9, § 1, 1995 Tex. Gen. Laws 31 (Tex.Rev.Civ. Stat. Ann. art. 1446c–0, since repealed and recodi-

fied). However, because the codification of the Public Util. Regulatory Act into the Utilities Code was a nonsubstantive codification, *see* Act of May 8, 1997, 75th Leg., R.S., ch. 166, § 10, 1997 Tex. Gen. Laws 713, 1018, we will cite to the Utilities Code for convenience.

ners. The only assets of the Partnership were the sublease of the facility and the electricity generated.

Shortly after the Partnership was formed, HL & P sued the Public Utility Commission ("PUC"), Destec, CLI, and Destec subsidiary Destec Operating Company for injunctive and declaratory relief that the Partnership was required to obtain a CCN from the PUC before delivering electricity to Lyondell and CLI. Lyondell intervened seeking a declaratory judgment that a CCN was not required. Following a two-day bench trial, the court rendered judgment declaring that CLI and Lyondell were required to obtain a CCN before operating as planned. In essence, the trial court used two alternative theories in deciding that the arrangement did not qualify for a CCN exemption. First, it ruled that, under the circumstances, the transfer of electricity was in substance a retail sale of power, even if it took the apparent form of a partnership distribution. Second, the trial court ruled that even if this was not a retail sale, the transfer of electricity did not qualify under the self-use exception created in Code § 31.002(1)(F)(i). Destec, Destec Operating Company, CLI, and Lyondell perfected this appeal.

### DISCUSSION

The Code defines an "electric utility" as "a person ... that owns or operates for compensation in this state equipment or facilities to produce, generate, transmit, distribute, sell, or furnish electricity in this state." Code § 31.002(1). Under the Code, a "person" includes a partnership. Code § 11.003(13). The Code requires an electric utility to obtain a CCN before rendering any service to the public. Code § 37.051. However, a person or corporation that generates and furnishes electricity only to itself is not considered an electric utility. Code § 31.002(1)(F)(i). Therefore, a partnership furnishing electricity only to itself would not be required to obtain a CCN in order to operate.

Appellants' first, second, and fifth points of error challenge the trial court's conclusion that the arrangement in question does not qualify for the exemption from the require-

ment of obtaining a CCN from the PUC. We review conclusions of law *de novo*. *See University of Texas Law Sch. v. Texas Legal Found.*, 958 S.W.2d 479, 481 (Tex.App.—Austin 1997, no pet.). The gist of appellants' argument is that the Partnership was a valid partnership and that the delivery of electricity to the partners was not a retail sale but merely a distribution of partnership assets to the partners. HL & P responds that, irrespective of the *form* of the transaction, its *substance* was a retail sale, asserting in its brief that

(1) CLI continues to control and operate an existing power plant, as it has for several years, and is responsible for providing all resources necessary for operations.

(2) Lyondell has no role in the management of the power plant or the "partnership" and is indemnified from all liabilities arising from operation of the plant or from the "partnership."

(3) During normal operations, Lyondell will receive and pay for only the power it needs, up to 61.4MW of power, no matter how much power the power plant is actually producing.

(4) Lyondell's only contributions to the "partnership" are four monthly payments, none of which reflect the actual costs of operating the power plant.

(5) If the actual cost of making Lyondell's power is more or less than Lyondell's payments, only CLI loses or gains.

(6) If Lyondell defaults, it loses nothing except its right to receive power.

(7) The "partnership" has no real assets or employees, does not accumulate assets or debts and will distribute nothing upon termination; it is simply a shell through which Lyondell's payments flow to CLI.

As support for this argument, HL & P cites *United States v. Drum*, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360 (1962) (transaction between trucking company and its employee-drivers was sale of transportation services, not self-use).

We agree that the substance of a transaction will generally control over its form for

regulatory purposes. *See Henry S. Miller Co. v. Treo Enters.*, 585 S.W.2d 674, 676 (Tex.1979). However, we need not address the intricacies of the present partnership arrangement because this appeal can be decided on a simpler, more direct basis.

In their fifth point of error, appellants contend the trial court erred by concluding that the Partnership's distribution of electric power to its partners constitutes a transfer of electricity between separate entities and therefore is not "self-use." Appellants support this contention by asserting that Code § 31.002(1)(F)(i) expressly authorizes partnerships to utilize the self-use exemption and that the "aggregate theory" of partnership should apply to the distribution of power to the partners. Appellants argue that the transfer of electricity by a partnership to its partners is merely a distribution that partners have a right to receive as part of their ownership interest in the partnership.

A partnership interest includes the right to receive distributions. Texas Revised Partnership Act ("TRPA"), Tex.Rev.Civ. Stat. Ann. art. 6132b–1.01(13) (West Supp.1998).[2] Distributions may be a transfer of cash or other property. TRPA art. 6132b–1.01(5). Appellants contend that electricity is an allowable form of such a distribution of property. *See Madison Gas & Elec. Co. v. Commissioner of Internal Revenue*, 633 F.2d 512, 515 (7th Cir.1980) (electricity distribution is an in-kind distribution). Appellants also contend that the "aggregate theory" of partnership is still utilized in TRPA in certain circumstances and should be utilized here to determine that the distribution of electricity is not a transfer between separate entities. We conclude, however, that appellants' argument does not overcome the clear language of TRPA.

TRPA declares that "a partnership is an entity distinct from its partners." TRPA art.

6132b–2.01. The published "Comment of Bar Committee" to this section states:

TRPA unequivocally embraces the entity theory of partnership by specifically stating in this section that a partnership is an entity distinct from its partners. This clear statement is intended to allay previous concerns that stemmed from confusion as to whether a partnership was an entity or an aggregate of its members.... Section 2.01 codifies the entity trend in the case law, e.g., Haney v. Fenley, Bate, Deaton and Porter, 618 S.W.2d 541 (Tex.1981).

TRPA art. 6132b–2.01 cmt.[3] Despite this language, appellants suggest that the aggregate theory is still utilized when "explicitly needed." *See* Steven Cooper, *The Texas Revised Uniform Partnership Act and the Texas Uniform Partnership Act: Some Significant Differences*, 57 Tex. B.J. 828 (1994). That article, however, states that such use would be mainly to ensure continued conduit taxation of the partnership form and to recognize the existence of duties running among partners as well as from partners to their partnerships. *Id.*

Appellants also cite *Lawler v. Dallas Statler–Hilton Joint Venture*, 793 S.W.2d 27 (Tex.App.—Dallas 1990, writ denied), as an example of the type of case that demands use of the aggregate theory. In *Lawler*, the court refused to apply the entity theory to a workers' compensation case, holding instead that employees of a partnership could sue individual partners as employers in addition to the partnership itself. *Id.* at 34. That case, however, was decided under the now-repealed Texas Uniform Partnership Act rather than TRPA. Moreover, even in *Lawler*, the court noted that the entity theory of partnerships is followed for most purposes, being especially reflected in four areas: property, creditors' rights, responsibility, and continuity. *Id.* at 33. TRPA is even more

---

2. TRPA currently applies to any partnership formed on or after January 1, 1994, which includes the Partnership in the present case. TRPA art. 6132b–11.03(a)(1). After December 31, 1998, TRPA applies to *all* partnerships, irrespective of formation date. TRPA art. 6132b–11.03(c).

3. The published comments, prepared by a committee of the State Bar of Texas, are virtually identical to the bill analysis presented to the 1993 legislature for its use in considering the bill enacting TRPA. *See* introductory comment preceding TRPA art. 6132b–1.01. In construing the statute, we consider the comments persuasive though certainly not binding.

direct in applying the entity theory. *See* TRPA, art. 6132b–2.01.

██ In addition, TRPA unequivocally provides that partnership property is not owned by individual partners: "Partnership property is not property of the partners. Neither a partner nor a partner's spouse has an interest in partnership property." TRPA art. 6132b–2.04. The comment to this section states: "This is a clarifying statement intended to eliminate any confusion that may have existed under [the Texas Uniform Partnership Act] as a result of its combination of the aggregate and entity concepts of partnerships." TRPA art. 6132b–2.04 cmt. The self-use exception of the Code applies if a partnership furnishes electricity only to itself. Here, however, the Partnership is furnishing electricity to its partners, who are distinct from the Partnership. Appellants present no reason why we should ignore the entity theory to meet its suggested standard of "explicit need." We hold that, under the present circumstances, when electricity moves from the Partnership to the partners, the electricity is not being furnished to the Partnership itself; rather, it is moving between distinct, separate entities.[4] We overrule point of error five.

In points of error one and two, appellants challenge the trial court's conclusion that the arrangement in question is a retail sale. To be exempt from the CCN requirement, the Partnership would have to show both that its distributions were for self-use and that the arrangement was not a retail sale. *See* Code § 31.002(1)(F)(i); 16 T.A.C. § 23.31(c)(1)(E) (1997). Because of our disposition of point of error five, we need not decide the retail sale issue.

██ In their third point of error, appellants contend the trial court improperly considered the alleged adverse effect a decision that the Partnership was not regulated by the Code would have on HL & P and third parties. The findings of fact in question state:

58. HL & P has numerous industrial customers, many of whom occupy sites in close proximity to each other along the Houston Ship Channel, in the Bayport area and near Freeport, Texas.

59. Several of these customers have existing cogeneration plants and occupy sites that adjoin the plant sites of other HL & P industrial customers.

60. If the transaction in this case were held to be exempt from PUC regulation under the self-service exception provided by PURA, then any user of electricity, including other customers of HL & P, could enter into arrangements with owners of cogeneration facilities and obtain their power from these non-regulated entities. Such de facto deregulation, if it is to come, should be effected by the Legislature.

In the body of this point of error, appellants assert that the trial court improperly considered this adverse effect on HL & P in deciding whether the Partnership met the statutory requirements for formation. In reviewing the record, however, we find that consideration of this adverse effect goes to the interpretation of the Code provisions in question, not to whether the Partnership met the requirements of partnership formation under the TRPA. "In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the: ... (5) consequences of a particular construction." Code Construction Act, Tex. Gov't.Code Ann. § 311.023 (West 1988). The trial court was well within its discretion in considering the effect on third parties and HL & P as consequences of its construction of the self-use exception in the Code.

Appellants further contend the trial court's findings are erroneous because no evidence supports them. In reviewing a no-evidence complaint, we consider only the evidence favorable to the verdict and disregard all contrary evidence. *Havner v. E–Z Mart Stores,*

---

4. We are not persuaded by Op. Tex. Att'y Gen. No. MW–45 (1979) (partnership is supplying electricity to itself when supplying electricity to its partners' plants). That opinion was written before the enactment of TRPA and, in any event, is not binding on this Court. *Holmes v. Morales,* 924 S.W.2d 920, 924 (Tex.1996).

*Inc.,* 825 S.W.2d 456, 458 (Tex.1992); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support a finding, a no-evidence challenge must fail. *Texarkana Memorial Hosp. v. Murdock,* 946 S.W.2d 836, 838 (Tex.1997).

■ In the present case, HL & P points to testimony by Steve Schaefer and Dr. Joe Pace to support the challenged findings. At trial, Schaefer's testimony encompassed the essence of the findings above, including his opinion that when customers have adjacent plant sites, constructing facilities and transmission lines between them would be practical and facilitated. Pace testified that many people would want to take advantage of such an arrangement. Two exhibits admitted into evidence also support these findings. We hold that the record contains more than a scintilla of evidence to support the findings. Point of error three is overruled.

Point of error four asserts that finding of fact sixty (quoted above) is erroneous because, in using the term "de facto deregulation," it assumes that all generation and furnishing of electricity in Texas is governed by PUC regulation. Appellants point out that specific instances of exemption from PUC regulation already exist, such as partnerships which furnish electricity to themselves. We do not read such an absolute assumption into this finding of fact. The gist of the finding appears to be merely that if the CCN exemption is as broad as appellants would have it and the arrangement in question is allowed, many more people will take advantage of the exemption and be outside of PUC regulation. As we held above, this statement is supported by evidence presented at trial. We overrule point of error four.

■ In point of error six, appellants challenge conclusion of law eight, which states:

Even if the Arrangement were not in substance a retail sale, ... the Arrangement would not constitute self-service by Lyondell within the meaning of § 2.0011(1)(A) of PURA 95 [Code § 31.002(1)(F)(i)] because some of the power that Lyondell claims to own would be sold or used by others in contravention of the requirements of § 2.0011(1)(A).

The referenced subsection of the Code states that a person is not considered a "public utility" when it furnishes electricity only to itself *and* when such electricity "is not resold to or *used by* others." Code § 31.002(1)(F)(i) (emphasis added). Appellants argue that the legislative history of the statute reveals that the resale prohibition does not include wholesale resale or sales of electricity back to utility companies. *See* House Comm. on State Affairs, Bill Analysis, Tex. S.B. 605, 67th Legis., R.S. (1981). While the legislative history may indicate the desirability of allowing such sales, that exception was not written into section 31.002(1)(F)(i). That subsection prohibits others from using the electricity that a partnership furnishes to itself. Under this subsection, such a person cannot even give electricity away, let alone sell it at a reduced or wholesale rate. A court may not add its own special exceptions into a statute. *See Public Util. Comm'n v. Cofer,* 754 S.W.2d 121, 124 (Tex.1988). Thus, we will not add a wholesale sale exception to the prohibition of resale or use by others in section 31.002(1)(F)(i).

■ Appellants also rely on section 31.002(1)(F)(ii), which exempts the generation of electric power that goes to an electric utility if the generation is used primarily for the person's own consumption. Appellants assert that Lyondell has a partnership interest in the Partnership, that the Partnership operates a qualifying facility that sells surplus power to electric utilities, and that the electric power distributed to Lyondell will be used primarily for Lyondell's consumption. As discussed above, however, this ignores the principle that a partnership is an entity distinct from its partners. TRPA art. 6132b–2.01. In the present case that means the partners' consumption of electricity is not the equivalent of consumption by the Partnership, and Partnership generation of electricity is distinct from generation of electricity by the partners. Therefore, Code § 31.002(1)(F)(ii) exempts neither Lyondell nor the Partnership. We overrule point of error six.

■ In point of error seven, appellants argue that the trial court erred by finding that CLI and Lyondell agreed to terminate

the Partnership if a court determined that a CCN was required for the Partnership's distribution of electricity to its partners.[5] Appellants contend there is no evidence that the parties made such an agreement. In the Partnership Agreement, CLI and Lyondell agreed that several events would require winding up, including a court determination that a CCN was required, *unless* both partners agree to appeal such order. Appellants argue that because they have appealed the trial court's decision, the admitted agreement to wind up the partnership has not yet become effective. We agree that the finding of fact is incomplete in that it does not state when the agreement to wind up becomes effective. Nonetheless, this defect is harmless in the present context. Despite even a wholly erroneous finding of fact, if a judgment is otherwise correct on the merits, the judgment will be upheld. *$47,200.00 v. State,* 883 S.W.2d 302, 309 (Tex.App.—El Paso 1994, writ denied); *City of San Antonio v. Lopez,* 754 S.W.2d 749, 753 (Tex.App.—San Antonio 1988, writ denied). Here, the finding of fact may be somewhat misleading in that the exception to the agreement to wind up was not noted therein, but even without the finding there is ample support for the judgment. Point of error seven is overruled.

### CONCLUSION

Because the trial court's judgment is supported by the conclusion that an in-kind distribution of electricity from a partnership to its partners is not the same as a partnership's furnishing electricity to itself, we overrule appellants' points of error and affirm the trial court's judgment.

CARROLL, C.J., not participating.

---

5. TRPA uses the term "winding up" of a partnership rather than "termination" or "dissolution." TRPA art. 6132b–8.01. The comment to that section states that the term "dissolution" was not used because its use had caused confusion in that "dissolution" was used to indicate the termination of the partnership; the term "winding up" is used to indicate "the beginning of the period during which the normal partnership business may no longer be conducted and the partners must begin the process of liquidating the partnership assets." TRPA art. 6132b–8.01 cmt.