THIRD DIVISION

 MARCH 29, 2002

1-00-2226; 
00-3622; 00-3769 (Cons.)

DARON A. HILL,               )  Appeal from the

)  Circuit Court of

Plaintiff-Appellant, )  Cook County

)

v. )

)

ST. PAUL FEDERAL BANK FOR          )

SAVINGS, ) Honorable John K.

) Madden, Judge

Defendant-Appellee. ) Presiding.

________________________________________________________________

SCOTT SHEPARD,     ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

)

)

HARRIS BANK ELK GROVE N.A., ) Honorable Ellis E.

) Reid, Judge

Defendant-Appellee. ) Presiding.

_________________________________________________________________

MARIS V. LIDAKA, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County

)

)

)

CORUS BANK, N.A., ) Honorable Robert V.

) Boharic, Judge

Defendant-Appellee. ) Presiding.

_________________________________________________________________

JUSTICE CERDA delivered the opinion of the court:

In this consolidated appeal, plaintiffs, Daron A. Hill, Scott Shepard, and Maris V. Lidaka, appeal from the dismissal of their respective class action complaints alleging the illegality of the practice of defendants, St. Paul Federal Bank for Savings, Harris Bank Elk Grove N.A., and Corus Bank, N.A., respectively, in posting overdrawn checks in the order of highest to lowest amount, resulting in some cases in more overdraft fees than if the lowest checks were posted first.  We affirm.

BACKGROUND

Plaintiff Shepard alleged that on January 20, 2000, he had $126.02 in his checking account when the bank received four of his checks, which were written in the amounts of $25.00, $13.00, $50.00, and $195.58.  There were sufficient funds for Harris Bank to have paid three checks for the lower amounts; in that case, the bank would have assessed only one overdraft fee.  Instead, the bank debited the check for $195.58 first, creating a larger overdraft.  As a result, all four checks bounced, and four overdraft fees were assessed.  

Plaintiff Shepard further alleged that it was Harris Bank’s unstated policy to (a) treat all of the checks as creating an overdraft even though there were sufficient funds to pay one or more of them; and (b) debit them in such order as maximized rather than minimized the number of checks that did not clear and the number of overdraft fees the bank may impose.  The bank programmed its computers to treat all checks received at one time as one amount and to sequence them from the highest dollar amount to the lowest dollar amount.  Harris Bank allegedly never informed Shepard of this practice. 

Count I alleged breach of contract/covenant of good faith and fair dealing.  It alleged that the account agreement between plaintiff and the bank gave the bank complete control and discretion over the order in which the checks were debited.  The high-to-low posting practice was allegedly inconsistent with the customer’s reasonable expectations.  The bank allegedly acted with improper motive because it posted the checks in this order merely to increase the number of fees it could charge. 

Count II alleged violation of the Illinois Consumer Fraud Act (815 ILCS 505/1 
et
 
seq
. (West 2000)).  Shepard alleged that the practice of the bank was deceptive because the practice was undisclosed.  Shepard also alleged that the practice was unfair because the bank took advantage of its complete control over the order of debiting items to increase its profits. 

The allegations of the complaints of plaintiff Hill against St. Paul and plaintiff Lidaka against Corus Bank were similar.

The following are the relevant portions of the account agreements of the three banks. 

 “If a check is written for an amount greater

 than what is in the account, the account will be overdrawn and we have the right to return the check unpaid.  We may, at our discretion, pay the check.  In either case, a fee will apply and be charged to the account.  If a check is written against uncollected funds *** we have the right to return the check unpaid or, at our discretion, pay the check.  We may return a check for any reason checks are normally returned ***.  In any case, a fee will apply and be charged to the account.”    (Corus Bank)

“If a check is presented to the Bank for payment at time when there is not a sufficient balance of available funds in your account, the Bank may either pay the check or refuse payment and return it unpaid.  

***

You agree to deposit sufficient funds to cover any overdraft and any fee charged in connection with an overdraft.

***

Service charges may be imposed by the Bank in connection with these accounts *** and are shown in the Schedule of Fees.”   (St. Paul Federal Bank for Savings)

 “If you write a check (or otherwise try to make a withdrawal) for more money than you have available in your account, you will be overdrawn.  We reserve the right to return the check (or other item) or, at our discretion, we may pay the check (or other item).  In either case, we may charge a fee to your account as disclosed [on the fee schedule].” (Harris Bank Elk Grove)

All the complaints were dismissed pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)).  Plaintiffs appealed, and their appeals were consolidated.

ANALYSIS 

In reviewing a motion to dismiss, the pertinent inquiry is whether plaintiff has alleged sufficient facts in the complaint that, if proved, would entitle plaintiff to relief.  
Boyd v. Travelers Insurance Co.
, 166 Ill. 2d 188, 194, 652 N.E.2d 267 (1995).  As we review the sufficiency of the complaint, all well-pleaded facts and all reasonable inferences from them are taken as true.  
Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 115, 660 N.E.2d 863 (1995).  Our review of such matters is 
de
 
novo
.  
Dace International, Inc. v. Apple Computer, Inc.
, 275 Ill. App. 3d 234, 237, 655 N.E.2d 974 (1995).

I. Breach of Covenant of Good Faith and Fair Dealing 

Plaintiffs first argue that defendants violated their duty of good faith and fair dealing in choosing a posting method that potentially results in more overdraft fees than other methods.

Section 4-303(b) of the Uniform Commercial Code (UCC) permits banks to pay checks in any order:

“*** items may be accepted, paid, certified, or charged to the indicated account of its customer in any order.”  810 ILCS 5/4-303(b) (West 2000).

Prior to a 1992 amendment, the statute stated “in any order convenient to the bank.”  810 ILCS 5/4-303(b) Historical and Statutory Notes, at 52 (Smith-Hurd Supp. 2001).   The phrase was deleted as being superfluous.  810 ILCS 5/4-303(b) Historical Notes, at 52 (Smith-Hurd Supp. 2001).  

According to a commentator, the statute reflects the abandonment of “dribble posting,” in which items are posted in batches throughout a day; rather, items received on one day are now posted all at one time on the next day.  6 Hawkland UCC Series §4-303:2 (2001).  

UCC comment 7 to section 4-303 justifies the discretion given to banks to choose a posting order:

“As between one item and another no priority rule is stated.  This is justified because of the impossibility of stating a rule that would be fair in all cases, having in mind the almost infinite number of combinations of large and small checks in relation to the available balance on hand in the drawer’s account; the possible methods of receipt; and other variables.  Further, the drawer has drawn all the checks, the drawer should have funds available to meet all of them and has no basis for urging one should be paid before another; and the holders have no direct right against the payor or bank in any event, unless of course, the bank has accepted, certified or finally paid a particular item, or has become liable for it under Section 4-302.  Under subsection (b) the bank has the right to pay items for which it is itself liable ahead of those for which it is not.”  810 ILCS 5/4-303(b) Uniform Commercial Code Comment, at 405 (Smith-Hurd 1993).

A commentator has also recognized that section 4-303(b) allows banks to use a posting order that is most beneficial to their own interests:

“It was fully appreciated that, where it could, the bank would protect itself, charging first those items it had paid over the counter or certified, taking its setoff next, and letting the rest be charged on a catch as catch can basis.”  6 Hawkland UCC Series §4-303:2 (2001).  

Plaintiffs argue that section 4-303(b) must be read in conjunction with UCC section 1-203, which requires that “[e]very contract or duty within this Act imposes an obligation of good faith in its performance or enforcement.”  810 ILCS 5/1-203 (West 2000).  Some code sections specifically identify the obligation to act in good faith.  
Watseka First National Bank v. Ruda
, 135 Ill. 2d 140, 149, 552 N.E.2d 775 (1990).  Good faith is defined by the UCC as “honesty in fact in the conduct or transaction concerned.”  810 ILCS 5/1-201(19) (West 2000).  

In addition to section 1-203, the duty of good faith and fair dealing exists in every contract in Illinois.  
Resolution Trust Corp. v. Holtzman
, 248 Ill. App. 3d 105, 112, 618 N.E.2d 418 (1993).  This obligation is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions.  
Resolution
, 248 Ill. App. 3d at 112.  No construction problem exists in this case.  

Defendants initially argue that the breach-of-contract counts were properly dismissed because there is no cause of action for breach of good faith.  

The comment to section 1-203 does state that the statute does not support an independent cause of action for the failure to perform or to enforce in good faith.  810 ILCS Ann. 5/1-203, Uniform Commercial Code Comment, at 17 (Smith-Hurd Supp. 2000). However, the comment goes on to state that “a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract.”  810 ILCS Ann. 5/1-203, Uniform Commercial Code Comment, at 17 (Smith-Hurd Supp. 2000). 

The banks’ account agreements contained provisions allowing overdraft fees.  Plaintiffs are alleging that the high-to-low posting order chosen by defendants was improper because it was inconsistent with the reasonable expectations of customers and because it was chosen to maximize the banks’ profits.  Plaintiffs have not brought an independent cause for the breach of good faith but have alleged that defendants have failed to perform the obligation to assess overdraft fees in good faith. 

Plaintiffs have cited no reported case holding that a bank using its discretion to implement a high-to-low posting method thereby violates its obligation to exercise good faith.  The reported cases addressing similar claims have found that processing checks in descending order does not violate good faith.  
Daniels v. PNC Bank, N.A.
, 137 Ohio App. 3d 247, 250, 738 N.E.2d 447, 449 (2000) (plaintiff’s task of persuading the court that a statutorily authorized procedure constitutes an act of bad faith and fair dealing was insurmountable); 
Smith v. First Union National Bank of Tennessee
, 958 S.W.2d 113, 116 (Tenn. Ct. App. 1997) (court rejected claim of bad faith on basis that bank has discretion under statute to post checks in any order). 

Although defendants’ account agreements do not specify the posting order that they will use, section 4-303(b) allows defendants to choose any method.  The legislature must have understood the broadness of the phrase “any order.”  It must have recognized that banks could choose a method that benefitted them–as in the case where posting higher amounts first results in a greater number of overdraft fees.  

There can be no lack of good faith in acting as authorized by the UCC.  See 
Washburn v. Union National Bank & Trust Co. of Joliet
, 151 Ill. App. 3d 21, 27, 502 N.E.2d 739 (1986) (having found that the sale of collateral was commercially reasonable within the meaning of section 9-507(2) of the UCC, the sale could not violate a bank’s duty of good faith).  Even if plaintiffs proved that the primary motivation of defendants was to maximize profits, their motive is irrelevant because their choice of the high-to-low posting method was authorized by the UCC. 

The trial court did not err in dismissing the counts alleging breach of contract and breach of good faith.

II.  Consumer Fraud and Deceptive Business Practices Act

Plaintiffs also argue that the failure of defendants to disclose their posting method was an omission of a material fact in violation of the Consumer Fraud and Deceptive Business Practices Act (the Act) (815 ILCS 505/1 
et
 
seq
. (West 2000).  Plaintiffs also argue that the failure to disclose was deceptive under the Act.

The Act prohibits the following conduct:

“[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the ‛Uniform Deceptive Trade Practices Act’ *** in the conduct of any trade or commerce.”  815 ILCS 505/2 (West 2000).

Defendants argue that their alleged failure to disclose comes within an exemption under the Act.  The Act states: 

“Nothing in this Act shall apply to any of the following:

(1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.” 815 ILCS 505/10b(1) (West 2000).   

In order to determine whether the banks’ failure to disclose the high-to-low posting order is exempt under the Act, the 
inquiry must first be made whether any law authorizes the nondisclosure. 

Federal law regulates what banks must disclose about account fees.  The Truth in Savings Act requires banks to maintain a schedule of fees.  12 U.S.C.A. § 4303(a) (2001).  This act also requires banks to disclose the conditions under which fees are assessed:

“The schedule *** shall contain the following information: *** 

A description of all fees, periodic service charges, and penalties which may be charged or assessed against the account ***, the amount of any such fees, charge, or penalty (or the method by which such amount will be calculated) and the conditions under which any such amount will be assessed.” 12 U.S.C.A. § 4303(b)(1) (2001).

The fees on the schedule must include fees “associated with checks returned unpaid.”  12 C.F.R. Pt. 230, Supp. I, § 230.4(b)(4) (2000).

The model clause specified by federal regulation for the disclosure of fees includes disclosure of the conditions for imposition:

“The following fees may be assessed against your account:

_____________________________________$________

_____________________________________$________

_____________________________________$_________

__________ (conditions for imposing fee) $____________

______________________________________ %            of

___________.”  12 C.F.R. Pt. 230, App. B, Model Clause B-1 (2000).  

Naming and describing the fee, “such as '$4.00 monthly service fee[,]' *** will typically satisfy” the requirements to state the amount and the conditions under which a fee may be imposed.  12 C.F.R. Pt. 230, Supp. I, § 230.4(b)(4) (2000).  A bank “need not include” in the schedule “any information not specified” in the regulations.  12 U.S.C.A. § 4303(a) (2001).

The order in which overdrawn checks are posted is not a “condition” under which overdraft fees are assessed within the meaning of section 4303(b)(1).  The condition for those fees is, rather, the nonexistence of sufficient funds to cover checks.  We conclude that federal law does not require banks to disclose in their schedules of fees the posting order of checks and other items.

Plaintiffs argue that the federal statute only concerns the minimum that banks must disclose.  While this is correct, it is the policy in Illinois not to extend disclosure requirements beyond what is mandated by federal law.  
Jackson v. South Holland
, 197 Ill. 2d 39, 49, 755 N.E.2d 462 (2001).  In light of that policy, we hold that a bank’s failure to disclose the posting order of checks in its schedule of fees comes under the Act’s exemption for conduct authorized by law.  See 
Lanier v. Associates Finance, Inc.
, 114 Ill. 2d 1, 17, 499 N.E.2d 440 (the Act does not require more extensive disclosure than the disclosure required by the comprehensive provisions of the Truth in Lending Act).

Plaintiffs further argue that the failure to disclose the posting order was deceptive even if defendants did not violate federal disclosure requirements.  See 
Martin v. Heinold Commodities, Inc.
, 163 Ill. 2d 33, 50, 643 N.E.2d 734 (1994) (literal compliance with federal disclosure regulations will not necessarily ensure that a violation of the federal regulations has not occurred because a customer could be deceived despite receipt of the information required by federal regulations).    

We initially note that the Act does not mandate particular subjects of disclosure but rather is a general prohibition of fraud and misrepresentation.  
Lanier
, 114 Ill. 2d at 17.  

Saunders v. Michigan Avenue National Bank
, 278 Ill. App. 3d 307, 662 N.E.2d 602 (1996), is persuasive authority for defendants’ position that the failure to disclose the posting order was not deceptive.  In 
Saunders
, as the result of one check that caused an overdraft of under $5, the bank imposed an overdraft charge against plaintiff customer on 11 separate occasions, assessing over $200 in charges.  Plaintiff alleged that the bank’s conduct was deceptive under the Act in part because the checking account agreement, which stated that the bank would charge $20 per day for overdrafts, did not define the term “overdraft.”  Plaintiff also alleged that the agreement did not disclose that the $20 charge would be assessed separately.  The court held that plaintiff received all the information necessary concerning overdraft charges and that the bank had no duty to define an overdraft.  
Saunders
, 278 Ill. App. 3d at 313.  

Defendants advised plaintiffs of the overdraft fees in their account agreements.  The posting order was not addressed.  However, because the posting order was not specified, the account agreements could not have mislead customers into believing that checks would be posted in a manner that would result in the least number of overdrafts.  Just as the bank in 
Saunders
 was not required to provide further information on the separate assessment of overdraft charges, defendants here were not required to provide further information on posting order of overdrawn checks.  Customers were left to inquire if they desired information about the order in which checks were posted.  We conclude that plaintiffs did not allege an omission that was deceptive under the Act. 

The trial court did not err in dismissing the counts alleging violation of the Act.  

The judgment of the trial court is affirmed.

Affirmed.

HALL, P.J., and WOLFSON, J., concur.