Affirmed and Majority and Concurring Opinions filed July 10, 2003









Affirmed and Majority and Concurring Opinions filed
July 10, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00480-CV

____________

 

TOM
W. FETTER ON BEHALF OF HIMSELF and

ALL OTHER SIMILARLY SITUATED INDIVIDUALS IN TEXAS, Appellant

 

V.

 

WELLS
FARGO BANK TEXAS, N.A., f/k/a NORWEST BANK TEXAS, N.A., and WELLS FARGO
SERVICES, INC., f/k/a NORWEST SERVICES, INC., Appellees

 



 

On Appeal from the
268th District Court

Fort
Bend
County, Texas

Trial Court Cause
No. 113,790

 



 

M A J O R I T Y   O P I N I O N








Appellant Tom W. Fetter
sued appellees Wells Fargo Bank Texas, N.A., f/k/a Norwest Bank Texas, N.A.,
and Wells Fargo Services, Inc., f/k/a Norwest Services, Inc., for breach of
contract and breach of the Uniform Commercial Code’s duty of good faith.  See Tex.
Bus. & Com. Code Ann. '
1.203 (Vernon 1994).[1]  The lawsuit, in which Fetter sought only a
declaratory judgment and permanent injunctive relief, arose from Wells Fargo’s
practice of posting checks from the highest dollar amount to the lowest dollar
amount, a practice which Fetter contends increases the fees Wells Fargo
collects for checks returned for insufficient funds (“NSF fees”).  Despite stating there were factual issues
about Wells Fargo’s good faith in instituting the practice, the trial court
concluded the express provisions of the UCC and the Account Agreement prevailed
and granted Wells Fargo’s motion for summary judgment, dismissing Fetter’s
claims with prejudice.[2]

In this case of first
impression, we agree that the express language of the Account Agreement and UCC
section 4.303(b),[3]
preclude Fetter’s claims as a matter of law. 
Accordingly, we affirm.

DISCUSSION[4]

Standard of Review








In a single issue, Fetter
challenges the trial court=s
order granting Wells Fargo’s motion for summary judgment.  The purpose of summary judgment is to
eliminate patently unmeritorious claims or untenable defenses; it is not
intended to deprive litigants of their right to a full hearing on the merits of
any real issue of fact.  Gulbenkian v.
Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).  The movant for summary judgment has the
burden to show there is no genuine issue of material fact and it is entitled to
judgment as a matter of law.  Nixon v.
Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  When deciding whether there is a disputed
material fact issue precluding summary judgment, the appellate court must take
as true all evidence favorable to the non‑movant.  Id. at 548B49.  The reviewing court must indulge every
reasonable inference in favor of the non‑movant and resolve any doubts in
its favor.  Id. at 549.

As a defendant moving for
a traditional summary judgment, Wells Fargo assumed the burden of showing as a
matter of law the plaintiff has no cause of action against it. See Levesque
v. Wilkens, 57 S.W.3d 499, 503 (Tex. App.CHouston
[14th Dist.] 2001, no pet.).  Traditional
summary judgment for a defendant is proper only when the defendant negates at
least one element of each of the plaintiff’s theories of recovery, or pleads
and conclusively establishes each element of an affirmative defense.  Science Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997).

Because the propriety of
summary judgment is a question of law, we review the trial court=s decision de novo.  Brown v. Blum, 9 S.W.3d 840, 844B45 (Tex. App.CHouston [14th Dist.]
1999, pet. dism’d w.o.j.).  Similarly,
matters of statutory construction are generally legal questions, subject to de
novo review.  See State Dep’t of
Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002).

The Live Pleadings and
the Summary Judgment Proof








In his live pleadings,
Fetter characterized his cause of action as one for “breach of contract and
breach of U.C.C. duty of good faith.”  He
sought a judgment declaring (1) Wells Fargo posts checks from highest to lowest
dollar amount for the sole purpose of increasing the NSF fees charged to
customers, (2) this practice of posting to increase NSF fees is “illegal and
improper,” (3) this practice violates Wells Fargo’s good faith obligations
under the UCC, and (4) Wells Fargo should be permanently enjoined from this
practice.  He also sought a permanent
injunction prohibiting Wells Fargo from continuing the practice.[5]  Fetter alleged Wells Fargo’s practice of
posting checks from high to low “was not done for any legitimate business
purpose, and was only instituted for the sole purpose of maximizing NSF fees
charged to [Wells Fargo’s] customers, including the Plaintiff, in violation of
Defendants’ duty of good faith pursuant to '
4.303 and '
1.203 of the Uniform Commercial Code.”  Fetter further alleged that, by failing to
perform its duties in good faith, Wells Fargo breached the Account Agreement,
which Wells Fargo contends governs its relationship with Fetter.

In its motion for summary
judgment, Wells Fargo argued Fetter’s breach of contract claim fails as a
matter of law because (1) UCC section 4.303(b) expressly allows banks to post
checks “in any order,” and (2) the Account Agreement expressly authorizes high
to low posting.  Wells Fargo argued
Fetter=s breach of the duty of
good faith claim fails as a matter of law because (1) the good faith duty
cannot be applied to rewrite the express terms of the Account Agreement, (2)
there can be no breach of the good faith duty when a party acts in strict
compliance with the terms of a contract, and (3) there is no independent cause
of action for breach of the good faith duty.

 In support of its motion, Wells Fargo attached
its representative’s affidavit, stating, “The [Account] Agreement Y has been the agreement
governing all consumer banking accounts at Wells Fargo Bank Texas, N.A., like
Plaintiff Tom W. Fetter’s, since April 2000.” 
Wells Fargo also attached the Account Agreement, which provides, in
part:

Your account may
be debited on the day an Item is presented by any means, including without
limitation electronically, or at an earlier time based on notification received
by the Bank that an Item drawn on your account will be presented for payment or
collection.  The Bank may pay Items
presented against your account in any order it chooses, unless a
particular order is either required or prohibited by law.  In particular, the Bank may, if it
chooses, pay Items in the order of highest dollar amount to lowest dollar
amount (unless such a practice is specifically prohibited by an
applicable state or federal law, rule, or regulation).  The Bank may change the order of posting
Items to your account at any time without notice to you.  (Emphasis added.)

 








Fetter’s response in the
trial court and on appeal relies to a large extent on a State Bar Committee
comment to UCC section 4.303, in which the committee opined that, although  subsection (b) provides great discretion to
the bank, the bank must continue to act in good faith, and, as an example, “a
procedure designed to maximize the number of returned checks solely to increase
returned check fees charged to customers would not be appropriate.”  Tex.
Bus. & Com. Code Ann. '
4.303 state bar committee cmt. (Vernon 2002). 
In support of his response, Fetter attached, among other documents,
Wells Fargo’s responses to interrogatories, in which Wells Fargo stated the
practice of posting checks from high to low was based on several factors,
including (1) assuring customers their larger, and potentially more important
checks (like mortgage and rent payments) will be paid before other checks, (2)
potential increase in bank revenues from the generation of fees, and (3) the
common use of the procedure in the banking industry.

Analysis

            Rules
of statutory construction.  This case
requires us to construe UCC sections 1.023 and 4.303(b) together.  A court’s objective in construing a statute
is to determine and give effect to the legislature’s intent.  Tex‑Air Helicopters, Inc. v.
Galveston County Appraisal Review Bd., 76 S.W.3d 575, 581 (Tex. App.CHouston [14th Dist.]
2002, pet. denied).  We presume the
legislature intended the plain meaning of the words it used.  Id. 
If possible, we must ascertain the legislature’s intent from the
language of the statute and not resort to extraneous matters for an intent not
stated in the statute.  Id.  When interpreting a statute, we consider the
entire act, its nature and object, and the consequence that would follow from
each construction.  Id.  We must reject any statutory interpretation
that defeats the legislative purpose.  Id.








Under the Code
Construction Act, we are required to construe uniform acts included in a code “to
effect its general purpose to make uniform the law of those states that have
enacted it.”  Tex. Gov=t Code Ann. ' 311.028 (Vernon 1998); see
MBank El Paso, N.A. v. Sanchez, 836 S.W.2d 151, 153B54 (Tex. 1992) (citing
out-of-state case in construing UCC provision). 
Although the Official UCC Comments following the code provisions are not
law, they are persuasive authority concerning interpretation of the statutory
language.  HRN, Inc. v. Shell Oil Co.,
102 S.W.3d 205, 212 n.5 (Tex. App.CHouston
[14th Dist.] 2003, pet. filed); see Lockhart Sav. & Loan Ass=n v. RepublicBank Austin,
720 S.W.2d 193, 195 (Tex. App.CAustin
1986, writ ref’d n.r.e.).  With these
principles in mind, we turn now to the statutory and contractual provisions at
issue in the present case.

Statutory and
contractual provisions authorizing high to low posting.  UCC section 4.303(b) provides:

Subject to
Subsection (a), items may be accepted, paid, certified, or charged to the
indicated account of a bank=s customer in
any order and before or after the bank’s regular banking hours.  A bank is under no obligation to determine
the time of day an item is received and without liability may withhold the
amount thereof pending a determination of the effect, consequence or priority
of any knowledge, notice, stop‑payment order, or legal process concerning
the same, or interplead such amount and the claimants thereto. 

 

Tex. Bus.
& Com. Code Ann. '
4.303(b) (Vernon 2002) (emphasis added).

Under the plain language
of this section, the legislature has authorized Wells Fargo’s practice of
posting from high to low.  In addition,
UCC comment 7 explains,

As between one
item and another no priority rule is stated. 
This is justified because of the impossibility of stating a rule that
would be fair in all cases, having in mind the almost infinite number of
combinations of large and small checks in relation to the available balance on
hand in the drawer’s account;  the
possible methods of receipt; and other variables.  Further, the drawer has drawn all the checks,
the drawer should have funds available to meet all of them and has no basis for
urging one should be paid before another ….

 

Tex. Bus.
& Com. Code Ann. '
4.303 cmt. 7 (Vernon 2002).[6]








Finally, the relationship
between Fetter and Wells Fargo is governed by an Account Agreement.  Under that Agreement Wells Fargo “may, if it
chooses, pay Items in the order of highest dollar amount to lowest dollar amount
(unless such a practice is specifically prohibited by an applicable state or
federal law, rule, or regulation).”

Fetter, in essence, is
asking this court to write this provision out of the Agreement, and authorization
for the provision out of the UCC.  The
net effect of Fetter’s requested change would render section 4.303 of Texas’s
UCC non-uniform, in derogation of the Code’s purpose “to make uniform the law
among the various jurisdictions.”  Tex. Bus. & Com. Code Ann. ' 1.102(b)(3) (Vernon
1994).

UCC obligation of
good faith and State Bar Committee Comment.  Fetter, however invokes UCC section 1.023,
which provides, “Every contract or duty within this title imposes an obligation
of good faith in its performance or enforcement.”  Tex.
Bus. & Com. Code Ann. '
1.203 (Vernon 1994).  “‘Good faith’ means
honesty in fact in the conduct or transaction concerned.”  Tex.
Bus. & Com. Code Ann. '
1.201 (19) (Vernon 1994).

In addition, Fetter
relies on a State Bar Committee Comment to section 4.303, which states,

Although the
discretion given a bank by subsection (b) is great, the bank must continue to
act in good faith in establishing its policies and procedures in this area.  For example, a procedure designed to
maximize the number of returned checks solely to increase returned check fees
charged to customers would not be appropriate.

 

Tex. Bus.
& Com. Code Ann. '
4.303 state bar committee cmt. (Vernon 2002) (emphasis added).  It is by virtue of this comment that Fetter
contends he has raised a fact issue; and by virtue of this comment he
distinguishes the foreign jurisdiction cases Wells Fargo cites.








As support for his
contention that we view this comment as persuasive authority, Fetter cites Destec
Energy Inc. v. Houston Lighting & Power Co., 966 S.W.2d 792, 795 n. 3
(Tex. App.CAustin
1998, no pet.).  The Destec court,
however, was analyzing a section of the Texas Revised Partnership Act (TRPA),
and the court specifically observed that the comment at issue in that case was
virtually identical to the bill analysis presented to the  legislature for its use in considering
enactment of the statute the appellate court was construing.  Id. 
The TRPA, unlike the UCC, has no Official Comments.  The only comments are the Bar Committee
Comments, and these Comments carry some weight because they legislature had
them when it enacted the TRPA.

Fetter has not presented
this court with anything in the legislative history of section 4.303 that would
suggest the legislature had the Bar Committee’s comment before it when it
enacted the provision permitting a bank to pay items “in any order.”  In fact, the legislative history suggests
otherwise, indicating the language permitting a bank to post items in any order
predated the Bar Committee’s comment by three decades.  See Act of May 19, 1965, 59th Leg.
R.S., ch. 721, '
4-303, 1965 Tex. Gen. Laws 1, 96 (stating “items may be …
paid  … in any order convenient
to the bank) (subsequently codified in Texas Business and Commerce Code and
amended; current version at Tex. Bus.
& Com. Code Ann. '
4.303 (Vernon 2002)).  Cf. Daryl B. Robertson, Report of the
Commercial Code Committee of the Section of Business Law of the State Bar of
Texas on Revised UCC Articles 3 and 4, 47 Baylor
L. Rev. 427, 499B500 (1995) (date of which suggesting comment was
not before the legislature until 1995, when the 74th Legislature deleted the
words “convenient to the bank” by the Act of May 28, 1995, 74th Leg., R.S., ch.
921, ' 4, sec. 4.303, 1995 Tex.
Gen. Laws 4582, 4638).  Because the State
Bar Committee Comment was not before the legislature when it enacted the
language permitting a bank to pay items “in any order,” we do not view it as
persuasive in analyzing the issue in the present case.








Texas case law.  In the context of a case in which the
plaintiff claimed damages for a violation of UCC section 1.203, the supreme
court observed, “In the absence of a specific duty or obligation [in the
contract] to which the good-faith standard could be tied, section 1.203 will
not support [the plaintiff’s] claim for damages.”  N. Nat. Gas Co. v. Conoco, Inc., 986
S.W.2d 603, 606B07
(Tex. 1998).  As the Corpus Christi Court
had previously explained, the UCC “duty of good faith and fair dealing is aimed
at making effective the agreement’s promises.” 
Adolph Coors Co. v. Rodriguez, 780 S.W.2d 477, 482 (Tex. App.CCorpus Christi 1989, writ
denied), cited with approval in N. Nat. Gas, 986 S.W.2d at 606.  Moreover, if the factfinder may write into a
contract other terms it believes are fair under the circumstances, any contract
is subject to being rewritten to better suit the court’s or the jury’s view of
what the parties should in “good faith” have included in the agreement,
regardless of what the parties actually did or did not provide.  Id. at 482.  As discussed above, in the present case,
Wells Fargo included within the Account Agreement the specific provision that
Wells Fargo could, if it chose, “pay Items in the order of highest dollar
amount to lowest dollar amount (unless such a practice is specifically
prohibited by an applicable state or federal law, rule, or regulation).”

Fetter, however, points
to La Sara Grain Co. v. First National Bank of Mercedes, as “instructive.”  See 673 S.W.2d 558 (Tex. 1984).  La Sara involved construction of UCC section
4.406.  As the La Sara court
explained regarding the version of section 4.406 then in effect:  

Section 4.406
places a duty upon the depositor to promptly examine his bank statement and
report to the bank the discovery of any “unauthorized signature or any
alteration.”  Id. ' 4.406(a).  If the depositor fails to comply with this
duty, the bank is protected from loss so long as it has exercised ordinary care
and paid the item in good faith.  Id.
' 4.406(b), (c).  If a depositor does not report an
unauthorized signature within one year from the time the statement and items
are made available to him, the bank=s care or lack
thereof becomes irrelevant, id. ' 4.406(d);  at that point, the customer=s only claim is
that the item was not paid in good faith. 
Id. ' 4.406(d).

 

Id. at 561B62 (footnote omitted)
(citing Act of May 25, 1967, 60th Leg., R.S., ch. 785, ' 1, sec. 4.406, 1967 Tex.
Gen. Laws 2343, 2458 (since amended, current provisions at Tex. Bus. & Com. Code Ann. ' 4.406 (Vernon
2002)).  Thus, section 4.406 is a
comprehensive section setting forth a customer=s
duties and affording the bank protection from loss, except when the bank does
not act in good faith in paying a check on an unauthorized signature.








In opening its account at
First National, La Sara also filed a corporate resolution with the bank
providing that any two of four authorized signatories could sign checks for the
corporation.  La Sara Grain, 673
S.W.2d at 561.  Harold Jones, La Sara’s
general manager, was one of the authorized signatories on the account.  Id. 
First National subsequently honored checks bearing only
Jones’s signature.  After firing Jones,
La Sara discovered he had embezzled over $300,000.  Id. 
La Sara contended the bank actually knew Jones’s signature alone was
insufficient, and, in paying the checks anyway, did not act in good faith.  Id. at 563.  The bank president testified at trial that
the bank would know of anything it had in its files.  Id. 
La Sara=s
corporate resolution specifying the two-signature requirement was in the bank’s
files.  Id.

Based on this evidence,
the court concluded the bank did not act in good faith in accepting the checks
with only one authorized signature.  Id.  In reaching this conclusion, the court relied
on the fact that the bank knew that two signatures were required and that the
checks bore only one signature.  Id.  Thus, in La Sara, the bank arguably
acted contrary to the agreement it had with the customer.  Moreover, the UCC section at issue contained
the good faith requirement as an express limitation of the protection it
provided to the bank.  La Sara is
not instructive for deciding a case involving different UCC provisions and a
bank acting in accord with the agreement it has with the customer.








Case law from
other jurisdictions. 
Although this is an issue of first impression in Texas, courts in other
jurisdictions have uniformly concluded that posting checks from high to low
does not contravene the UCC good faith provision at issue in the present
case.  See Hill v. St. Paul Fed. Bank
for Sav., 768 N.E.2d 322 (Ill. App. Ct. 2002) (on review of order granting
motion to dismiss complaint); Daniels v. PNC Bank, N.A., 738 N.E.2d 447
(Ohio Ct. App. 2000) (same); Smith v. First Union Nat’l Bank of Tenn.,
958 S.W.2d 113 (Tenn. Ct.  App. 1997)
(same).[7]  In Hill, the court rejected an
argument virtually identical to Fetter’s argument in this case:  

The banks’
account agreements contained provisions allowing overdraft fees.  Plaintiffs are alleging that the high-to-low
posting order chosen by defendants was improper because it was inconsistent
with the reasonable expectations of customers and because it was chosen to
maximize the banks’ profits.  Plaintiffs
have not brought an independent cause for the breach of good faith but have
alleged that defendants have failed to perform the obligation to assess
overdraft fees in good faith.

…

Although
defendants’ account agreements do not specify the posting order that they will
use, section 4-303(b) allows defendants to choose any method.  The legislature must have understood the
broadness of the phrase “any order.”  It
must have recognized that banks could choose a method that benefitted themCas in the
case where posting higher amounts first results in a greater number of
overdraft fees.

There can be
no lack of good faith in acting as authorized by the UCC.  See Washburn v. Union National Bank &
Trust Co. of Joliet, 151 Ill. App. 3d 21, 27, 104 Ill. Dec. 242, 502 N.E.2d
739 (1986) (having found that the sale of collateral was commercially
reasonable within the meaning of section 9-507(2) of the UCC, the sale could
not violate a bank=s duty of good faith).  Even if plaintiffs proved that the primary
motivation of defendants was to maximize profits, their motive is irrelevant
because their choice of the high-to-low posting method was authorized by the
UCC.

 

Hill,
768 N.E.2d at 326B27.[8]

 

Fetter argues Hill
is distinguishable based on the State Bar Committee Comment to the Texas UCC
section 4.303.  For the reasons discussed
above, we do not find that comment persuasive authority.

Fetter has cited no
reported case in which a court has held a bank violates the UCC duty of good
faith when it implements, performs, or enforces a high to low method of posting
checks.  We have found none.

We overrule Fetter’s sole
issue.

We affirm the judgment of
the trial court.

 

 

/s/        John S. Anderson

Justice

 

 

 

 

Judgment rendered and Majority and Concurring Opinions filed
July 10, 2003.

Panel consists of Justices Anderson, Fowler, and Seymore.
(Fowler, J., concurring.)











[1]  Although
Fetter brought the lawsuit as a class action, the trial court never ruled on
Fetter’s motion to certify the class. 





[2]  The trial
court and the parties refer to Wells Fargo’s Consumer Account Agreement
variously as “the contract,” the ADeposit
Account Agreement,” the ADepositor Agreement,@ and the
“Deposit Contract.”  We  refer to the document as the “Account
Agreement.”





[3]  See Tex. Bus. & Com. Code Ann. ' 4.303(b) (Vernon 2002).





[4]  The factual
and procedural background of the case is generally not germane to the
analysis.  We set forth the relevant
historical and procedural facts in the course of the discussion.





[5]  At oral
argument, Fetter’s counsel characterized the lawsuit as one seeking only
injunctive relief.





[6]  We note Fetter
seeks injunctive relief.  Injunctive
relief is an equitable remedy, and the complaining party must come into court
with clean hands.  See Landry=s Seafood Inn & Oyster Bar v. Wiggins, 919 S.W.2d 924, 927 (Tex. App.CHouston [14th Dist.] 1996, no writ).  Here, it would appear Fetter wrote checks
exceeding the available balance in his account.





[7]  The Smith
court specifically concluded that, when a party is acting under authority
expressly granted by statute and is not exceeding that authority, there is, as
a matter of law, no breach of either the common law duty of good faith in the
performance of the contract or a violation of the statutory requirement of good
faith.  Smith v.
First Union Nat=l Bank of Tenn.,
958 S.W.2d 113, 117 (Tenn. Ct. App. 1997).  The Hill court cited Smith.  Hill v. St.
Paul Fed. Bank for Sav., 768 N.E.2d 322, 326 (Ill.
App. Ct. 2002)





[8]  The facts in
the case sub judice are even stronger than those in Hill because
Wells Fargo has language in its Account Agreement specifically permitting high
to low posting in addition to the authorization provided in UCC section
4.303(b).