Order, Supreme Court, New York County (Eileen Bransten, J.), entered March 15, 2013, which, insofar as appealed from, granted defendant’s motion to dismiss the amended complaint pursuant to CPLR 3211 (a) (1), (5) and (7), unanimously af *550 firmed, with costs. Order, same court and Justice, entered March 15, 2013, which denied plaintiffs motion to strike the affidavits and most of the exhibits submitted by defendant in support of its motion to dismiss, unanimously affirmed, without costs.
Defendant is a New York State-chartered savings bank. The amended complaint challenges the method by which defendant has imposed overdraft charges against plaintiffs checking account. It is stated in the preamble to the amended complaint that defendant has engaged in the following allegedly unlawful practices: (1) applying “ ‘courtesy overdraft’ ” payments and loans to defendant’s customers without their prior approval; (2) imposing overdraft charges when deposit tickets indicate that sufficient funds are available to cover particular debits; (3) imposing overdraft charges that amount to usurious interest rates; (4) reordering (prioritizing) account withdrawals to create or maximize overdraft charges; (5) commingling automated clearing house and electronic fund transfer debits to manufacture overdraft charges; (6) using “ ‘shadow’ ” lines of credit to make overdraft loans without disclosing same to defendant’s customers; (7) stating in literature provided to customers that defendant “ ‘may’ ” provide overdraft protection or pay overdrafts as a discretionary courtesy while knowing that it would do the same as a matter of policy; (8) imposing account fees that result in overdraft charges; and (9) misstating account balances in statements issued to defendant’s customers.
Plaintiff’s three causes of action are based on theories of contract, alleged violations of General Business Law § 349 and usury. Plaintiff asserts that his contract with defendant consists of a brochure entitled “All About Your Apple Bank Accounts” that was issued in March 1998. The contract cause of action was properly dismissed pursuant to CPLR 3211 (a) (7) because “plaintiff failed to allege the breach of any particular contractual provision” set forth in the brochure (see Kraus v Visa Intl. Serv. Assn., 304 AD2d 408, 408 [1st Dept 2003]; see also McNeary v Niagara Mohawk Power Corp., 286 AD2d 522, 524 [3d Dept 2001]). To be sure, plaintiff conceded below that “the Agreement is silent as to several of Plaintiffs allegations, and thus, no specific provision of the Agreement can be pleaded.” We are also not persuaded by plaintiffs argument that a breach of the covenant of good faith and fair dealing is sufficiently pleaded with respect to the brochure’s representation that defendant may provide overdraft protection or pay overdrafts as set forth above. Plaintiff misplaces his reliance on Broder v MBNA Corp. (281 AD2d 369 [1st Dept 2001]). In Broder there was an issue of fact as to whether a purported lower promotional interest rate *551 was deceptive and violative of the implied covenant of good faith and fair dealing under a credit card agreement (id. at 370). Although it stated that it may do so, the credit card issuer in Broder did not allocate payments to satisfy promotional balances with lower interest rates before cash advance balances that carried higher interest rates (id.). To that extent, the cardholders in Broder were deprived of the opportunity to take advantage of the promoted lower interest rate. By contrast, the complaint here does not set forth any difference in the fees and charges that plaintiff would have incurred had defendant decided to reject his checks for insufficient funds instead of paying the overdrafts. In all other respects, the claim that defendant breached the implied covenant of good faith and fair dealing was properly dismissed because it duplicates the contract cause of action (see Logan Advisors, LLC v Patriarch Partners, LLC, 63 AD3d 440, 443 [1st Dept 2009]).
To state a claim under General Business Law § 349, “a plaintiff must allege that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof” (Gaidon v Guardian Life Ins. Co. of Am., 94 NY2d 330, 344 [1999] [internal quotation marks omitted]). A “ ‘deceptive act or practice’ ” is defined as “a representation or omission ‘ “likely to mislead a reasonable consumer acting reasonably under the circumstances” ’ ” (id.). Plaintiff asserts that the alleged so-called “shadow” lines of credit violate the statute. The complaint borrows from the definition of the term that is set forth in Gutierrez v Wells Fargo Bank, N.A. (730 F Supp 2d 1080 [ND Cal 2010], affd in part, revd in part on other grounds 704 F3d 712 [9th Cir 2012]), a case that involved overdrafts on debit card transactions. The Gutierrez court explained the practice as follows: “Wells Fargo implemented a practice involving a secret bank program called ‘the shadow fine.’ Before, the bank declined debit-card purchases when the account’s available balance was insufficient to cover the purchase amount. After, the bank authorized transactions into overdrafts, but did so with no warning that an overdraft was in progress. Specifically, this was done without any notification to the customer standing at the checkout stand that the charge would be an overdraft and result in an overdraft fee. Thus, a customer purchasing a two-dollar coffee would unwittingly incur a $30-plus overdraft fee” (id. at 1085).
The practices alleged in the instant complaint are demonstrably distinguishable because plaintiff makes no claim that the applicability of his overdraft protection was not disclosed to *552 him. Unlike the debit card customers in Gutierrez, plaintiff was advised in his brochure that defendant had reserved the right to pay overdrafts on his checking account. We further note that the Gutierrez court specifically avoided the issue of whether the use of shadow lines of credit is an illegal practice. The court stated: “[Plaintiffs’ claims did not target the legality of the shadow line but were limited strictly to high-to-low posting and its impact on overdraft fees. As such, the relief granted herein will be limited to the bank’s high-to-low resequencing practices” (id. at 1136).* The holding in Gutierrez, therefore, does not support plaintiffs argument that the shadow lines of credit alleged in the complaint are actionable under General Business Law § 349.
The court properly rejected plaintiff’s argument that the practice of “reordering,” as described in the complaint, violates General Business Law § 349 as well as the implied covenant of good faith and fair dealing. Although not dispositive, UCC 4-303 (2) gives banks broad discretion with respect to the posting of transactions by providing that “items may be accepted, paid, certified or charged to the indicated account of its customer in any order.” As aptly explained in the Official Comment to the statute: “As between one item and another no priority rule is stated .... This rule is justified because of the impossibility of stating a rule that would be fair in all cases, having in mind the almost infinite number of combinations of large and small checks in relation to the available balance on hand in the drawer’s account; the possible methods of receipt; and other difficulties. Further, where the drawer has drawn all the checks, he should have funds available to meet all of them and has no basis for urging one should be paid before another” (UCC 4-303, Comment 6). On this record, we find that plaintiff has not sufficiently alleged that defendant has engaged in a deceptive practice or violated the implied covenant of good faith and fair dealing by posting transactions to plaintiffs checking account in the manner authorized by UCC 4-303 (2) (see e.g. Hill v St. Paul Fed. Bank for Sav., 329 Ill App 3d 705, 768 NE2d 322 [2002]).
Plaintiff’s claim that defendant’s deposit tickets misrepresented his account balances is refuted by the brochure that plaintiff acknowledges as his agreement. The brochure disclosed defendant’s funds-availability policy. In particular, it advised de *553 fendant’s customers of delays in the availability of deposited funds and that withdrawals could not be made during the delay. These express disclosures also belie plaintiff’s claim that defendant’s monthly bank statements were deceptive.
The third cause of action, alleging usury, was properly dismissed because, as found by the motion court, overdraft charges are not interest. “If an instrument provides that the creditor will receive additional payment in the event of a contingency beyond the borrower’s control, the contingent payment constitutes interest within the meaning of the usury statutes” (Blue Wolf Capital Fund II, L.P. v American Stevedoring, Inc., 105 AD3d 178, 183 [1st Dept 2013] [emphasis added]). Even assuming a debtor-creditor relationship between the parties, the contingency of an account overdraft would have been within plaintiff’s control (see e.g. Video Trax, Inc. v NationsBank, N.A., 33 F Supp 2d 1041, 1054-1055 [SD Fla 1998], affd 205 F3d 1358 [11th Cir 2000], cert denied 531 US 822 [2000]).
We have considered plaintiffs remaining contentions and find them unavailing. Concur — Mazzarelli, J.E, Andrias, DeGrasse, Freedman and Gische, JJ. [Prior Case History: 2013 NY Slip Op 31170(U).]

 In Gutierrez, high-to-low posting is described as a bookkeeping device by which the bank posted debit card purchases in order of highest-to-lowest dollar amount with the effect of maximizing the number of overdrafts (704 F3d at 716-717). This is the same practice plaintiff refers to as “reordering.”